UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| COMMONWEALTH OF MASSACHUSETTS, | ) | |
| Plaintiff, | ) | Case No. 1:24cv12136 |
| v. | ) | |
| ALLIED RECYCLING CENTER, INC. | ) | |
| Defendant. | ) | August 20, 2024 |

**CONSENT DECREE**

## I.    INTRODUCTION

WHEREAS, Allied Recycling Center, Inc. ("Allied") operates a scrap metal recycling facility at 1901 Main Street, Walpole, Massachusetts ("Facility");

WHEREAS, Plaintiff, the Commonwealth of Massachusetts ("Commonwealth"), acting by and through the Attorney General, has filed a Complaint in this action alleging that Allied has discharged industrial stormwater contaminated with lead, zinc, aluminum, copper, chemical oxygen demand ("COD"), and total suspended solids ("TSS") from the Facility through the Cedar Swamp wetlands system, which is connected to the Neponset River, without complying with the Federal Multi-Sector General Permit ("MSGP") issued by the United States Environmental Protection Agency ("EPA") in violation of the Federal Clean Water Act, 33 U.S.C. §§ 1331(a), *et seq.* ("FCWA");

WHEREAS, on September 18, 2019, Allied submitted a Notice of Intent to be covered by the MSGP, and on May 19, 2021, Allied created a Stormwater Pollution Prevention Plan ("SWPPP") for its Facility pursuant to the MSGP;

WHEREAS, on July 20, 2022, the Commonwealth provided notice of the alleged violations and its intent to file suit against Allied ("Notice") to the Administrator of the EPA; EPA's Region 1 Administrator; the Massachusetts Department of Environmental Protection ("MassDEP"); and Allied, pursuant to Section 505 of the FCWA, 33 U.S.C. § 1365;

WHEREAS, the Commonwealth today filed a Complaint against Allied in this Court seeking injunctive relief and the assessment of civil penalties based upon the allegations described above;

WHEREAS, the Commonwealth and Allied (collectively, the "Parties") have reached an agreement to resolve the Commonwealth's claims against Allied;

WHEREAS, the Commonwealth and Allied consent to the entry of this Consent Decree without a trial on any issues and agree that the entry of this Consent Decree is an appropriate means to resolve this case;

WHEREAS, the Parties agree that the settlement of this matter has been negotiated in good faith and at arm's length, that implementation of this Consent Decree will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is consistent with the goals of the FCWA and in the public interest; and

WHEREAS, this Consent Decree shall be submitted to the United States Department of Justice for the 45-day statutory review period, pursuant to 33 U.S.C. § 1365(c).

NOW, THEREFORE, based on the Joint Motion of the Parties for Entry of this Consent Decree, and before taking any testimony and without the adjudication of any issue of fact or law except as provided in Section II (Jurisdiction and Venue), it is **ADJUDGED, ORDERED, AND DECREED**, as follows:

## II.    JURISDICTION AND VENUE

1.    This Court has jurisdiction over the parties and subject matter of this action pursuant to Section 505(a)(1)(A) of the FCWA, 33 U.S.C. § 1365(a)(1)(A), and 28 U.S.C. § 1331 (an action arising under the laws of the United States). Venue is proper in the District of Massachusetts pursuant to Section 505(c)(1) of the FCWA, 33 U.S.C. § 1365(c)(1).

2.    The Complaint alleges facts, which, if proven, would constitute good and sufficient grounds for the relief set forth in this Consent Decree.

## III.    EFFECTIVE DATE

3.    The effective date of this Consent Decree shall be when the Court enters the Consent Decree on the docket ("Effective Date").

## IV.    PARTIES BOUND

4.    This Consent Decree shall constitute a binding agreement between the Parties, and Allied consents to its entry as a final judgment by the Court and waives all rights of appeal upon its entry on the docket. If the Court declines to enter this Consent Decree on any ground except one related to form, this Consent Decree is voidable at the option of either Party within fourteen (14) days of the Court's decision. If, on the other hand, the Court determines that substantive modifications to this Consent Decree are necessary prior to the Court's entry of it, the Parties shall enter into good faith negotiations to discuss the modifications, and this Consent Decree shall be void unless the Commonwealth and Allied agree otherwise in writing within fourteen (14) days of the Court's decision.

5.    The provisions of this Consent Decree shall apply to and bind Allied, and any other persons bound pursuant to Fed. R. Civ. P. 65(d)(2).

3

6.      Allied shall provide a true copy of this Consent Decree to all of its managers, directors, officers, supervisors, employees, and agents whose duties might include compliance with any provision of this Consent Decree. Allied shall also provide a copy of this Consent Decree to any contractor retained to perform work required under this Consent Decree, and shall condition any such contract on the contractor's performance of the work in compliance with the terms of this Consent Decree.

7.      Until Allied completes all requirements of Sections V (Payments) and VI (Injunctive Relief), Allied shall provide written notice of any prospective change or transfer in ownership, management, or operation of the Facility, together with a copy of the proposed written change or transfer agreement, to the Attorney General in accordance with Section XIII (Notices) of this Consent Decree. At least thirty (30) days prior to any change or transfer of ownership, management, or operation of the Facility that occurs prior to the completion of the requirements set forth in Section VI (Injunctive Relief). Defendants shall provide a copy of this Consent Decree to the proposed transferee or new manager or new operator. No change or transfer in ownership, management, or operation of the Facility shall relieve Allied of its obligations under Section V (Payments) of this Consent Decree. No change or transfer in ownership, management, or operation of the Facility shall relieve Allied of its obligations under this Consent Decree in sections other than Section V (Payments), unless: 1) the transferee agrees, in writing, to undertake the obligations required of Allied under the this Consent Decree besides those set forth in Section V (Payments), and to be added as a Defendant or substituted for Allied as a Defendant under this Consent Decree and thus assume Allied's obligations, rights, and benefits and be bound by the Consent Decree's terms; 2) the Commonwealth agrees to consent,

4

in writing, to relieve Allied of its obligations under the Consent Decree, and 3) the transferee becomes a Party under this Consent Decree pursuant to Section XV (Modification).

8. Allied shall not violate this Consent Decree, and Allied shall not allow its officers, directors, agents, servants, employees, or contractors to violate this Consent Decree. In any action to enforce this Consent Decree, Allied shall not raise as a defense the failure by any of its managers, directors, officers, supervisors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## V. PAYMENTS

9. Allied shall pay the sum of eighty-seven thousand, five hundred dollars ($87,500) in the following manner to fund projects that benefit water quality in Massachusetts:

    a. Within fifteen (15) days of the Effective Date, Allied shall pay twenty-one thousand, eight hundred, seventy five dollars ($21,875) to the Southwest Boston Community Development Corporation ("SWBCDC");

    b. Within three-hundred sixty-five (365) days of the Effective Date, Allied shall pay twenty-one thousand, eight hundred, seventy five dollars ($21,875) to SWBCDC;

    c. Within seven-hundred thirty (730) days of the Effective Date, Allied shall pay twenty-one thousand, eight hundred, seventy five dollars ($21,875) to SWBCDC;

    d. Within one thousand ninety-five (1,095) days of the Effective Date, Allied shall pay twenty-one thousand, eight hundred, seventy five dollars ($21,875) to SWBCDC;

10.    Allied shall make the payments to SWBCDC described in the previous paragraph by EFT in accordance with current EFT procedures, using the following account information:

Southwest Boston Community Development Corporation



and shall include the following in the payment information: "SWBCDC, *Commonwealth v. Allied Recycling Center, et al.*" Any payments received after 4:00 P.M. (Eastern Time) will be credited on the next business day. At the time of payment, Allied shall send notice to the Commonwealth that such payment has been made by electronic mail as set forth below in Section XIII (Notices) and shall include Allied's Taxpayer Identification Number, all of the payment information stated in this Paragraph, and the amount of the payment. The Commonwealth may alter this payment information from time to time by electronic mail or first class mail to Allied pursuant to Section XIII (Notices) of this Consent Decree.

11.    Within fifteen (15) days of the Effective Date, Allied shall reimburse the Attorney General's Office in the amount of thirty thousand dollars ($30,000) to defray the Attorney General's Office's costs, including attorneys fees, incurred in connection with its work on this matter.

12.    Allied shall make the cost payments described in the previous paragraph by EFT to the Commonwealth of Massachusetts in accordance with current EFT procedures, using the following account information:

Commonwealth of Massachusetts, Office of the Attorney General





and shall include the following in the payment information: "EPD, *Commonwealth v. Allied Recycling Center, et al. - COSTS.*" Any payments received by the Commonwealth after 4:00 P.M. (Eastern Time) will be credited on the next business day. At the time of payment, Allied shall send notice that such payment has been made to the Commonwealth by electronic mail as set forth below in Section XIII (Notices) and shall include Allied's Taxpayer Identification Number, all of the payment information stated in this Paragraph, and the amount of the payment. The Commonwealth may alter this payment information from time to time by electronic mail or first-class mail to Allied pursuant to Section XIII (Notices) of this Consent Decree.

## VI.    INJUNCTIVE RELIEF

13.    For the purposes of this Section VI and Section VII (Facility Access and Preservation of Records), all terms that are defined by the FCWA, shall have the meaning assigned to them in that Act and the regulations promulgated thereunder.

14.    Allied agrees to operate the Facility in compliance with the requirements of the applicable MSGP, including any amendments thereto or reissuances thereof, and with the FCWA.

15.    Stormwater Discharges Associated with Industrial Activity

  a. *Additional Pollutant Reduction Measures.* Allied will direct and control Stormwater Discharges Associated with Industrial Activity at the Facility to minimize pollutants "to the extent achievable using control measures (including best management practices) that are technologically available and economically practicable and achievable in light of the best industry practice"

pursuant to MSGP Section 2.0. Allied will take the following actions by the following dates:

i. Within forty-five (45) days of the Effective Date, Allied shall provide the Attorney General's Office with a final plan showing the drainage improvements and the stormwater treatment system to be constructed at the Facility ("Final Stormwater Improvements Plan"). The Final Stormwater Improvements Plan shall be consistent with the preliminary plan titled "Allied Recycling Center, Compiled Project Plans, Walpole, Massachusetts, 02081," a copy of which is attached as Exhibit A;

ii. Within seven (7) days of the Effective Date, Allied shall complete the implementation of the Final Stormwater Improvements Plan and complete the installation of the stormwater treatment system described therein;

iii. Within seven (7) days of the Effective Date, Allied shall eliminate all Stormwater Discharges Associated with Industrial Activity from the Facility that do not flow through an Outfall properly identified and described in Allied's Notice of Intent and SWPPP, as updated for consistency with the new stormwater system described in the Final Stormwater Improvements Plan, as described in subparagraph (c.) below ("Allied's Updated Notice of Intent and SWPPP");

iv. By the date upon which Allied has completed the installation of the stormwater treatment system, Allied shall control Stormwater

Discharges Associated with Industrial Activity through the Outfalls identified and described in Allied's Updated Notice of Intent and SWPPP. *See* MSGP Section 2; and

b. *Monitoring.* Per the MSGP, Allied shall monitor Stormwater Discharges Associated with Industrial Activity through the Outfall(s) identified and described in Allied's Updated Notice of Intent and SWPPP. *See* MSGP Section 4. All reporting of monitoring results shall be certified by an authorized person as set forth in Section G of Appendix M of the 2021 Stormwater Permit. In addition to the permit requirements, Allied shall prepare video recordings of the sampling events for the first quarter after the Effective Date at Outfall(s) from which stormwater samples are collected and shall provide the Attorney General's Office with copies of such video recordings within ten (10) business days of such sampling, which shall include an accurate record of the time and date on which they were recorded. Each video shall make clear and evident, through visual imagery:

   i.    The location or locations at which it was recorded,

  ii.    The persons present during the sampling,

 iii.    The location of the pipe or conduit being sampled from,

 iv.    The manner in which each sample is taken, and

  v.    The sample or samples taken

If the video imagery is insufficient to verify items (i)-(v) above, then the Attorney General's Office will have the right to be present during or require the video

recording of another representative sampling event in a subsequent calendar quarter of its choosing.

c.  *SWPPP Updates:* Allied shall update its SWPPP to accurately reflect operations at the Facility, including but not limited to:

i.  The size of the active area;

ii.  The areas of exposed materials;

iii.  The locations of storage of all oil and hazardous fluids; and

iv.  The locations of all catch basins.

## VII.   FACILITY ACCESS AND PRESERVATION OF RECORDS

16.  The Attorney General's Office shall have the right to enter the Facility during normal daylight business hours having provided forty-eight (48) hours written notice to Allied as set forth in Section XIII (Notices), without securing any judicial or administrative warrants, for the purposes of conducting any activity related to the enforcement of the terms of this Consent Decree. Allied expressly consents to such entry. During any inspection, the Attorney General's Office shall have access to and permission to copy any documentation Allied is required to possess by the applicable MSGP or is otherwise relevant to enforcement of this Consent Decree. To the extent related to the enforcement of the terms of this Consent Decree, the Attorney General's Office may take videos or photographs of the Facility and its operations, copies of which will be promptly shared with Allied, and samples of any waste, product, soil, water, or other materials at the Facility, which shall be split or shared with Allied during sampling either in person or at an on-site location Allied shall designate. Any information, documents, samples, visual or recorded evidence, or materials or tangible evidence gathered during any inspection

pursuant to this Paragraph may be used by the Commonwealth in an action to enforce this Consent Decree or in any other administrative, civil, or criminal enforcement action.

17.     In addition to complying with any other applicable local, state, or federal records preservation requirements, until two (2) calendar years after Allied completes all of the requirements of Sections V (Payments) and VI (Injunctive Relief) of this Consent Decree, or there is a change or transfer of ownership, management, or operation of the Facility under Paragraph 7 and the transferee takes physical custody of all Allied documents that would be subject to this Paragraph, Allied shall preserve at least one legible copy of all documents in its possession, custody, or control that relate to the performance of Allied's obligations under this Consent Decree. If Allied retains or employs any agent, consultant, or contractor for the purpose of complying with the terms of this Consent Decree, then Allied's agreement or contract with the agent, consultant, or contractor shall require such person or persons to provide Allied with a copy of all documents relating to the performance of Allied's obligations under this Consent Decree. This requirement includes electronic documents. Any original documents or copies of documents subject to this requirement may be maintained in an electronic format.

18.     For a period of three (3) years following the Effective Date, Allied shall provide the Attorney General's Office with the following documents in accordance with the terms of Section XIII (Notices):

    a.  Copies of all documents Allied submits to EPA, the Commonwealth, and/or the City of Walpole concerning Allied's stormwater controls or the quality of Allied's Stormwater Discharges Associated with Industrial Activity, including but not limited to all documents and reports submitted as required by the

11

MSGP. Such documents and reports shall be sent to the Attorney General's Office on the same day that they are submitted to the governmental entity;

b.  All maintenance records for the Facility's stormwater pollution control systems, within ten (10) business days of Allied's receipt of a written request by the Attorney General's Office;

c.  Written notices of any changes made to any of Allied's stormwater control measures that are described in its SWPPP pursuant to MSGP 6.2.4, within fourteen (14) days of completion;

d.  Written notice of any changes made to Allied's stormwater control measures pursuant to MSGP Section 6.3, within fourteen (14) days of completion;

e.  Current copies of Allied's SWPPP within three (3) business days of a written request by the Attorney General's Office; and

f.  Laboratory reports and analytical results of stormwater sampling performed by or for Allied that Allied does not submit to EPA, upon written request of the Attorney General's Office, within ten (10) business days of such request or, if such request is prospective, within ten (10) business days of receipt the reports.

19.  This Consent Decree in no way limits or affects any right of entry or inspection or any right to obtain information held by the Commonwealth or any of its branches, departments, agencies, or offices pursuant to federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Allied to maintain documents, records or other information imposed by federal or state law, regulations, or permits.

## VIII.   FORCE MAJEURE

12

20.     Allied shall perform the actions required by Section VI (Injunctive Relief) within the time limits established in that Section, unless the performance is prevented or delayed solely by events that constitute a force majeure event. A force majeure event is an event that arises from causes entirely beyond Allied's control that will delay or prevent the performance of any action required by Section VI (Injunctive Relief) despite Allied's due diligence. A force majeure event does not include, among other things, unanticipated or increased costs of performance, changed economic circumstances, or a financial inability to perform. Except as excused by the Attorney General's Office pursuant to this Section, delay on the part of Allied's contractors, subcontractors, or consultants shall be attributable to Allied.

21.     Any request to extend a deadline set forth in Section VI (Injunctive Relief), including a deadline in a plan submitted to the Attorney General's Office by Allied pursuant to that Section, shall be made in writing to the Attorney General's Office prior to the expiration of the deadline. In its written request to the Attorney General's Office, Allied shall describe (a) what action has been affected, (b) the anticipated length of delay, (c) the cause of the delay, and (d) the steps or measures it will take to prevent or minimize the delay. Upon receipt of a timely request for an extension under this Section, the Attorney General's Office may, in its discretion, grant additional time if it is persuaded that the delay in performance is the result of a force majeure event. If the Attorney General's Office does not agree that a force majeure event has occurred or does not agree to the length of the extension of time sought by Allied and that disagreement cannot be resolved by informal negotiation, then the Attorney General's Office will notify Allied in writing of the Attorney General's Office's position, which shall be binding unless Allied invokes the Dispute Resolution procedures set forth in Section IX (Dispute Resolution), except that Allied must invoke those procedures within seven (7) days after receipt

13

of the Attorney General's Office's written notice. In any proceedings under Section IX (Dispute Resolution), Allied shall bear the burden of demonstrating, by a preponderance of the evidence, that (a) Allied provided the written request required above, (b) the delay in performance is the result of circumstances entirely beyond Allied's control, and (c) Allied could not have prevented or avoided the delay by the reasonable exercise of due care, foresight, or due diligence. Allied's failure to comply with the notice requirements of this Paragraph shall constitute waiver of its right to request an extension of time with regard to any delay, and a waiver of any right to relief from the deadlines in Section VI (Injunctive Relief) or any plan submitted to the Attorney General's Office pursuant to that Section.

## IX.   DISPUTE RESOLUTION

22.     Unless otherwise provided in this Consent Decree, the Dispute Resolution procedures in this Section shall be the exclusive mechanism for Allied to resolve disputes arising under or with respect to this Consent Decree. These procedures, however, shall not apply to actions by the Commonwealth to enforce obligations of Allied under this Consent Decree.

23.     If Allied disagrees with a written determination of the Attorney General's Office, then Allied may, within thirty (30) days of the date of the Attorney General's Office's determination, request reconsideration of the determination in writing by submitting any information or material it believes demonstrates that the Attorney General's Office's determination was erroneous to the Attorney General's Office. Unless otherwise provided in this Consent Decree, Allied's failure to submit a written request for reconsideration within the period specified in this Paragraph shall constitute a waiver of Allied's ability to seek reconsideration and, in that case, the Attorney General's Office's determination shall be final and unreviewable. If, after consideration of a timely written request for reconsideration, the Attorney General's

Office decides to affirm, in whole or in part, the agency's original determination, then the

Attorney General's Office shall notify Allied of its determination on reconsideration.

24.    The Attorney General's Office's determination on reconsideration shall be final

unless Allied seeks judicial review of the dispute by filing with the Court and serving on the

Attorney General's Office, in accordance with Section XIII (Notices), a motion in this case

requesting judicial resolution of the dispute within fourteen (14) days of receipt of the Attorney

General's Office's determination. In an action for judicial review under this Section, Allied shall

bear the burden of demonstrating that the Attorney General's Office's determination on

reconsideration was arbitrary and capricious or otherwise not in accordance with law. Allied's

motion and supporting memorandum shall not raise any new issues or be based on new facts or

information that Allied did not present previously to the Attorney General's Office during the

dispute resolution process described in this Section.

## X.    INTEREST AND COLLECTIONS

25.    If any payment required pursuant to this Consent Decree is late or not made,

Allied shall pay interest on any overdue amount for the period of such nonpayment at the rate of

twelve percent (12%) per annum, computed monthly, and shall pay all expenses associated with

collection by the Commonwealth of the unpaid amounts and interest for any period of

nonpayment after the payment obligation becomes due, including reasonable attorneys' fees.

## XI.    EFFECT OF CONSENT DECREE

26.    Upon compliance with the requirements of this Consent Decree, (a) this Consent

Decree shall resolve Allied's liability for the specific legal claims alleged against it in the

Complaint and (b) the Commonwealth shall release Allied from liability for the specific legal claims alleged against Allied in the Complaint.

27.     Nothing in this Consent Decree: (a) shall bar any action by the Commonwealth on any legal claim not specifically pleaded in the Complaint or for any violations not revealed to the Commonwealth; (b) shall be deemed to excuse noncompliance by Allied or any of the persons or entities otherwise bound by this Consent Decree with any law or regulation; or (c) shall preclude a separate or ancillary action by the Commonwealth to enforce the terms of this Consent Decree, or any permit or other approval issued by MassDEP or EPA. The Commonwealth expressly reserves all claims for injunctive relief for violations of all of the statutes and regulations referred to in this Consent Decree, whether related to the specific legal claims resolved by this Consent Decree or otherwise.

28.     This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations. Allied is responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits, and Allied's compliance with this Consent Decree shall not be a defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The Attorney General's Office, does not, by its consent to entry of this Consent Decree, warrant or aver in any manner that Allied's compliance with any aspect of this Consent Decree will result in compliance with provisions of any federal, state, or local law, regulation, or permit.

29.     Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a party to this Decree.

## XII.    MISCELLANEOUS

16

30.    Allied understands and agrees that, pursuant to 11 U.S.C. § 523(a)(7), the costs or sums that Allied is required to pay under this Consent Decree are not subject to discharge in any bankruptcy.

31.    Allied shall pay all expenses, including reasonable attorneys' fees and costs, incurred by the Commonwealth in the enforcement of this Consent Decree.

32.    Nothing in this Consent Decree shall prevent Allied from taking any action otherwise required by law.

33.    The titles in this Consent Decree have no independent legal significance and are used merely for the convenience of the Parties.

34.    In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or state or federal holiday, the period shall run until the close of business of the next business day.

35.    Signature of the Parties transmitted by scanning and email are binding.

## XIII.   NOTICES

36.    Unless otherwise specified in this Consent Decree, notices and submissions required by this Decree shall be made in writing by first class mail and email to the following addresses:

For the Attorney General's Office and the Commonwealth:

Louis Dundin
Assistant Attorney General
Deputy Division Chief

Environmental Protection Division
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
Louis.dundin@mass.gov

For Allied:

Edward Jamieson, President
Allied Recycling Center, Inc.
1901 Main Street
Walpole, MA 02801
(508) 668-8699
ejamieson@arcscrap.com

With copies to:

Marc J. Goldstein, Esq.
Beveridge & Diamond, PC
155 Federal Street, Suite 1600
Boston, MA 02110
mgoldstein@bdlaw.com

Michael S. Campinell, Esq.
Beveridge & Diamond, PC
155 Federal Street, Suite 1600
Boston, MA 02110
mcampinell@bdlaw.com

or, to such other place or to the attention of such other individual as a Party may from time to time designate by written notice to the other Party to this Consent Decree.

## XIV.   INTEGRATION

37.    Except as expressly set forth in this Consent Decree, this Consent Decree sets forth all of the obligations of the Parties and represents the complete and exclusive statement of the Parties with respect to the terms of the settlement agreement embodied by this Consent Decree; any other representations, communications, or agreements by or between the Parties shall have no force and effect.

18

## XV.    MODIFICATION

38.    The terms of this Consent Decree may be modified only by a subsequent written agreement signed by the Parties. Where the modification constitutes a material change to any term of this Consent Decree, it shall be effective only by written approval of the Parties and the approval of the Court. The Commonwealth's decision to extend a deadline in this Consent Decree shall not constitute a material change for purposes of this Paragraph.

## XVI.    AUTHORITY OF SIGNATORY

39.    The person signing this Consent Decree on behalf of Allied acknowledges: (a) that they have personally read and understand each of the numbered Paragraphs of this Consent Decree; (b) that, to the extent necessary, Allied's managers, directors, officers, and shareholders have consented to Allied entering into this Consent Decree and to its entry as a Final Judgment; and (c) that they are authorized to sign and bind Allied to the terms of this Consent Decree.

## XVII.    RETENTION OF JURISDICTION

40.    The Court shall retain jurisdiction over this case for purposes of resolving disputes that arise under this Consent Decree, entering orders modifying this Consent Decree, or effectuating or enforcing compliance with the terms of this Consent Decree.

## XVIII. FINAL JUDGMENT

41.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a Final Judgment of the Court.


**IT IS SO ORDERED. JUDGMENT** is hereby entered in accordance with the foregoing.


By the Court:


UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS


10/18/2024
Date

20

The Undersigned Parties enter into this Consent Decree in the matter of *Commonwealth*

*v. Allied Recycling Center, Inc.* (Mass. District Court).

FOR THE COMMONWEALTH OF
MASSACHUSETTS

FOR ALLIED RECYCLING CENTER,
INC.

ANDREA JOY CAMPBELL
ATTORNEY GENERAL


Louis M. Dundin, BBO No. 660359
Assistant Attorney General
Deputy Division Chief
Environmental Protection Division
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
(617) 963-2433
Louis.dundin@mass.gov

Edward Jamieson, President
Allied Recycling Center, Inc.
1901 Main Street
Walpole, MA 02801
(508) 668-8699
ejamieson@arcscrap.com

Dated:   8/19/24

Dated:   8-19-24

21

# EXHIBIT A
## (Compiled Project Plans)

# ALLIED RECYCLING CENTER
## COMPILED PROJECT PLANS
## WALPOLE, MASSACHUSETTS, 02081

**PROJECT TEAM:**

PROJECT MANAGER:



ED JAMIESON
1901 MAIN STREET,
WALPOLE, MA 02081
PHONE: 508.668.8699

SOLID/SPECIAL WASTE CHARACTERIZATION AND PROTOCOL:



4 FIRST STREET,
BRIDGEWATER, MA 02324
PHONE: 508.697.3191

WETLAND RESTORATION:



500A WASHINGTON STREET
QUINCY, MA 02169
PHONE: 617.405.4140

STORMWATER IMPROVEMENTS:



227 WILLOW STREET, SUITE A201
SOUTH HAMILTON, MA 01982
PHONE: 603.205.8052



USGS TOPOGRAPHIC MAP
SCALE: 1" = 500'

| DESCRIPTION | SHEET |
|---|---|
| COVER SHEET | 1 |
| SITE OVERVIEW PLAN | 2 |
| WETLAND DELINEATION PLANS | |
|    AREAS A & B WETLAND DELINEATION PLAN | WD1 |
|    AREA C WETLAND DELINEATION PLAN | WD2 |
| SOIL SAMPLING PLANS | |
|    SOLID/SPECIAL WASTE CHARACTERIZATION PLAN | S1 |
|    SURFICIAL ACM SAMPLING GRID | S2 |
|    SOIL STOCKPILE SAMPLING GRID | S3 |
| WETLAND RESTORATION PLANS | |
|    WETLAND RESTORATION OVERVIEW | W1 |
|    AREA C PROPOSED RESTORATION | W2 |
|    AREAS A & B PROPOSED RESTORATION | W3 |
|    CROSS SECTIONS | W4 |
|    DETAILS | W5 |
| STORMWATER DRAINAGE IMPROVEMENTS | |
|    TITLE SHEET | SW1 |
|    GENERAL NOTES | SW2 |
|    EXISTING CONDITIONS | SW3 |
|    PROPOSED CONDITIONS | SW4 |
|    TEMPORARY EROSION AND SEDIMENT CONTROLS | SW5 |
|    STORMWATER PIPE PROFILES | SW6 |
|    BASINS CROSS SECTIONS | SW7 |
|    DETAILS I | SW8 |
|    DETAILS II | SW9 |
|    DETAILS III | SW10 |

**PREPARED ON:**
**AUGUST 11, 2023**

| ALLIED RECYCLING CENTER | | | |
|---|---|---|---|
| 1901 MAIN STREET, WALPOLE, MASSACHUSETTS, 02081 | | | |
| R E V I S I O N S | | | |
| NO. | DATE | DESCRIPTION | DR/CK |
| | | | |
| | | | |
| | | | |
| | | | |



1:1 WETLAND RESTORATION
72,793 s.f. (1.44 Ac) REQUIRED
81,899 s.f. (1.88 Ac) PROVIDED
STREAM RESTORATION
176 l.f. REQUIRED
538 l.f. PROVIDED

## LEGEND

| | |
|---|---|
| ▬▬▬ | PROPERTY BOUNDARY |
| ▬▬▬ | FLAGGED WETLAND LINE |
| ▬▬▬ | WETLAND RESTRICTION AREA |
| ▬‧▬‧▬ | PROPOSED INTERMITTENT STREAM CENTERLINE |
| (green) | PROPOSED WETLAND RESTORATION (OFFSITE) |
| (cyan) | PROPOSED WETLAND RESTORATION (ONSITE) |
| (orange) | PROPOSED STORMWATER IMPROVEMENTS |
| (symbol) | PROPOSED TEST PIT LOCATION |
| CMW-01 | EXISTING CONECO SOIL BORING AND GROUNDWATER MONITORING WELL |
| ⊕ | PROPOSED SOIL BORING AND GROUNDWATER MONITORING WELL |
| ⊕S⊕D | PROPOSED DEEP AND SHALLOW GROUNDWATER MONITORING WELL COUPLET |
| ◆ | PROPOSED WETLAND MONITORING WELL |

NOTES:

1. ELEVATIONS ARE BASED ON NAVD 88 DATUM.

REVISIONS

ALLIED RECYCLING CENTER, INC.
1901 MAIN STREET
WALPOLE, MA 02081

SITE OVERVIEW PLAN

PREPARED FOR:
ALLIED RECYCLING CENTER, INC.
1901 MAIN STREET
WALPOLE, MA 02081

COMPILED PROJECT PLANS

CONECO
Engineers & Scientists
PHONE: 800-548-3355    WEBSITE: www.coneco.com

DATE: 8/11/2023
DESIGNED: EGM    CHECKED: MVK
DRAFTED: EGM    IN CHARGE: DJD
SCALE: 1" = 100'
PROJECT NO. 6789.0
SHEET NO.

## 2

100'  0  100'  200'
SCALE IN FEET



NOTES:

1.  VERTICAL DATUM: NAVD 88.
2.  HORIZONTAL DATUM: MASSACHUSETTS STATE PLANE, NAD 83.
3.  LOCUS PROPERTY IS IN ZONE X WITH A SMALL PORTION IN ZONE A AS SHOWN ON FLOOD INSURANCE RATE MAP NUMBER 25021C0332E DATED JULY 17, 2012.
4.  AN ACTUAL ON THE GROUND SURVEY WAS CONDUCTED BETWEEN JANUARY 17-19, 2023.
5.  WETLAND RESOURCE AREAS DELINEATED BY LUCAS ENVIRONMENTAL, LLC ON DECEMBER 15, 2022.

**CONECO**
*Engineers & Scientists*
PHONE: 800-548-3355   WEBSITE: www.coneco.com

ALLIED RECYCLING CENTER, INC.
1901 MAIN STREET
WALPOLE, MA 02081

WETLAND DELINEATION PLANS

ALLIED RECYCLING CENTER, INC.
1901 MAIN STREET
WALPOLE, MA 02081

AREAS A & B
WETLAND DELINEATION PLAN

| DATE: | 8/11/2023 |
|---|---|
| DESIGNED: EGM | CHECKED: MVK |
| DRAFTED: EGM | IN CHARGE: DJD |
| SCALE: | 1" = 100' |
| PROJECT NO. | 6789.0 |
| SHEET NO. | **WD1** |



NOTES:

1. VERTICAL DATUM: NAVD 88.
2. HORIZONTAL DATUM: MASSACHUSETTS STATE PLANE, NAD 83.
3. LOCUS PROPERTY IS IN ZONE X WITH A SMALL PORTION IN ZONE A AS SHOWN ON FLOOD INSURANCE RATE MAP NUMBER 25021C0332E DATED JULY 17, 2012.
4. AN ACTUAL ON THE GROUND SURVEY WAS CONDUCTED BETWEEN JANUARY 17–19, 2023.
5. WETLAND RESOURCE AREAS DELINEATED BY LUCAS ENVIRONMENTAL, LLC ON DECEMBER 15, 2022.

CONECO

Engineers & Scientists
PHONE: 800-548-3355   WEBSITE: www.coneco.com

REVISIONS

| NO. | DATE | DESCRIPTION | DR/CK |
|-----|------|-------------|-------|

PREPARED FOR:
ALLIED RECYCLING CENTER, INC.
1901 MAIN STREET
WALPOLE, MA 02081

DRAWING:
AREA C
WETLAND DELINEATION PLAN

PROJECT:
ALLIED RECYCLING CENTER, INC.
1901 MAIN STREET
WALPOLE, MA 02081

PLAN SET:
WETLAND DELINEATION PLANS

| DATE: | 8/11/2023 |
|-------|-----------|
| DESIGNED: EGM | CHECKED: MVK |
| DRAFTED: EGM | IN CHARGE: DJD |
| SCALE: | 1" = 100' |
| PROJECT NO. | 6789.0 |

SHEET NO.:
WD2





## Cut/Fill Summary

| Name | Cut Factor | Fill Factor | 2d Area | Cut | Fill | Net |
|---|---|---|---|---|---|---|
| Pile - Conc. Rubble - 1.20.23 | 1.000 | 1.000 | 43028.16 Sq. Ft. | 0.34 Cu. Yd. | 10004.26 Cu. Yd. | 10003.92 Cu. Yd.<Fill> |
| Totals | | | 43028.16 Sq. Ft. | 0.34 Cu. Yd. | 10004.26 Cu. Yd. | 10003.92 Cu. Yd.<Fill> |



NOTES:
1. VERTICAL DATUM: NAVD 88.
2. HORIZONTAL DATUM: MASSACHUSETTS STATE PLANE, NAD 83.
3. LOCUS PROPERTY IS IN ZONE X WITH A SMALL PORTION IN ZONE A AS SHOWN ON FLOOD INSURANCE RATE MAP NUMBER 25021C0332E DATED JULY 17, 2012.
4. AN ACTUAL ON THE GROUND SURVEY WAS CONDUCTED BETWEEN JANUARY 17–19, 2023.

ALLIED RECYCLING CENTER, INC.
1901 MAIN STREET
WALPOLE, MA 02081

SOIL STOCKPILE SAMPLING GRID

SOIL SAMPLING PLANS

CONECO
Engineers & Scientists
PHONE: 800-548-3355   WEBSITE: www.coneco.com

| DATE: | 8/11/2023 |
|---|---|
| DRAWN/CHECK: | WCB/SML |
| SCALE: | 1" = 80' |
| PROJECT #: | 6789.0 |

FIGURE NO.

S3









**CROSS SECTION A-A**
SCALE: 1"=10' HORIZONAL, 1"=2' VERTICAL

**CROSS SECTION B-B**
SCALE: 1"=10' HORIZONAL, 1"=2' VERTICAL

**CROSS SECTION C-C**
SCALE: 1"=10' HORIZONTAL, 1"=2' VERTICAL

DATE: 8/11/2023
DESIGNED: CML    CHECKED: CML
DRAFTED: MVK    IN CHARGE: CML
SCALE: AS NOTED
PROJECT NO. 6789.0
SHEET NO. **W4** OF 5

Coneco
Engineers & Scientists
PHONE: 800-548-3355    WEBSITE: www.coneco.com

ALLIED RECYCLING CENTER, INC.
1901 MAIN STREET
WALPOLE, MA 02081

CROSS SECTIONS

WETLAND RESTORATION PLANS



NOTES:
1. ENDS OF WATTLE SHALL BE TURNED UP THE SLOPE, SO AS TO RETAIN WATER AND PREVENT ITS RELEASE FROM THE END OF THE WATTLE.
2. WATTLES TO BE SECURED BY WOODEN STAKES SPACED EVERY 4' ACROSS THE LENGTH OF THE WATTLE.
3. A STAKE SHALL BE PLACED WITHIN 2' OF THE END OF THE WATTLE.
4. WHEN JOINING TWO WATTLES, TIGHTLY ABUT BOTH ENDS OR OVERLAP THE WATTLES APPROXIMATELY 6". IF WATTLES ARE JOINED BY ABUTTING THE ENDS, TIE THE ENDS TOGETHER USING HEAVY TWINE OR PLASTIC LOCKING TIES.

## STRAW WATTLE DETAIL
N.T.S.



PLAN VIEW

CROSS-SECTION

NOTES:
1. NUMBER OF BALES MAY VARY DEPENDING ON SITE CONDITIONS.
2. THE BASIN IS TO BE SIZED TO PREVENT DISCHARGE WATER FROM OVERTOPPING THE BASIN.
3. KEEP AS FAR FROM WETLANDS AS PRACTICAL. (100' MIN.)
4. CLEAN AND REMOVE AS SOON AS DEWATERING IS COMPLETE.

## DEWATERING BASIN
N.T.S.



## FLOATING SILTATION CURTAIN
N.T.S.



NOTES:
1. BEGIN AT THE TOP OF BLANKET INSTALLATION AREA BY ANCHORING BLANKET IN A 6" DEEP TRENCH BACKFILL AND COMPACT TRENCH AFTER STAPLING.
2. ROLL THE BLANKET DOWN THE SLOPE IN THE DIRECTION OF THE WATER FLOW.
3. THE EDGES OF BLANKETS MUST BE STAPLED WITH APPROX. 4 INCH OVERLAP WHERE TWO OR MORE STRIP WIDTHS ARE REQUIRED.
4. WHEN BLANKETS MUST BE SPLICED DOWN THE SLOPE, PLACE BLANKET END OVER END WITH 6 INCH (MIN.) OVERLAP AND ANCHOR DOWN SLOPE BLANKET IN A 6 INCH DEEP TRENCH.
5. BLANKETS SHALL BE A BIODEGRADABLE JUTE MESH MATERIAL FREE OF WEEDS AND INVASIVE MATERIAL OR APPROVE EQUAL.

## SLOPE STABILIZATION BLANKET DETAIL
N.T.S.



## GRAVEL BAG COFFERDAM
N.T.S.



ALLIED RECYCLING CENTER, INC.
1901 MAIN STREET
WALPOLE, MA 02081

DETAILS

ALLIED RECYCLING CENTER, INC.
1901 MAIN STREET
WALPOLE, MA 02081

WETLAND RESTORATION PLANS

CONECO
Engineers & Scientists
PHONE: 800-548-3355   WEBSITE: www.coneco.com

| DATE: | 8/11/2023 |
| DESIGNED: CML | CHECKED: CML |
| DRAFTED: MVK | IN CHARGE: CML |
| SCALE: | N.T.S. |
| PROJECT NO. | 6789.0 |

SHEET NO.

# W5
OF 5

# FINAL (100 PERCENT) DRAWINGS
# STORMWATER DRAINAGE IMPROVEMENTS PROJECT
## 1901 MAIN STREET, WALPOLE, MASSACHUSETTS
## AUGUST 2023



**VICINITY MAP**

SCALE IN MILES



**LOCATION MAP**

SCALE IN MILES

### DRAWING INDEX

| DRAWING NO. | DRAWING TITLE |
|---|---|
| 1 | TITLE SHEET |
| 2 | GENERAL NOTES |
| 3 | EXISTING CONDITIONS |
| 4 | PROPOSED CONDITIONS |
| 5 | TEMPORARY EROSION AND SEDIMENT CONTROLS |
| 6 | STORMWATER PIPE PROFILES |
| 7 | BASINS CROSS SECTIONS |
| 8 | DETAILS I |
| 9 | DETAILS II |
| 10 | DETAILS III |

DETAIL NUMBER

SHEET ON WHICH ABOVE
DETAIL IS PRESENTED

DETAIL NUMBER

**DETAIL**
**TITLE OF DETAIL**
SCALE: 1" = 1'

SHEET ON WHICH
ABOVE DETAIL WAS
FIRST REFERENCED

EXAMPLE: DETAIL NUMBER 4 PRESENTED ON
SHEET NO. 6 WAS REFERENCED FOR THE FIRST TIME
ON SHEET NO. 3.

### DETAIL IDENTIFICATION LEGEND
(ABOVE SYSTEM ALSO APPLIES TO SECTION IDENTIFICATIONS,
HOWEVER, LETTERS ARE USED INSTEAD OF NUMBERS.)

### ABBREVIATIONS

| | | | | |
|---|---|---|---|---|
| EL | ELEVATION | OD | OUTER DIAMETER |
| CPP | CORRUGATED POLYETHYLENE PIPE | STA | STATION |
| DIA | DIAMETER | SW | STORMWATER |
| FF | FINISH FLOOR | SWPPP | STORMWATER POLLUTION PREVENTION PLAN |
| HS | HYDRODYNAMIC SEPARATOR | | |
| INV | INVERT | TYP | TYPICAL |
| ID | INNER DIAMETER | | |
| LF | LINEAL FEET | | |
| MAX | MAXIMUM | | |
| MIN | MINIMUM | | |
| MH | MANHOLE | | |
| NTS | NOT TO SCALE | | |
| OCS | OUTLET CONTROL STRUCTURE | | |

**PROJECT LOCATION:**

ALLIED RECYCLING CENTER, INC
1901 MAIN STREET
WALPOLE, MA 02081

**PREPARED FOR:**



1901 MAIN STREET
WALPOLE, MA 02081
TELEPHONE: 508.668.8699

**PREPARED BY:**

Geosyntec consultants

227 WILLOW STREET, SUITE A201
SOUTH HAMILTON, MA 01982
TELEPHONE: 603.205.8052

| REVA | DATE | DESCRIPTION | DRN | APP |
|---|---|---|---|---|
| 0 | 08/18/2023 | ADDRESSING WALPOLE CONSERVATION COMMISSION COMMENTS FROM AUGUST 2023 HEARING | JD | DHB |

**Geosyntec consultants**
227 WILLOW STREET, SUITE A201
SOUTH HAMILTON, MA 01982
TELEPHONE: 603.205.8052

**ALLIED RECYCLING**
1901 MAIN STREET
WALPOLE, MA 02081
TELEPHONE: 508.668.8699

TITLE:
**TITLE SHEET**

PROJECT:
**STORMWATER DRAINAGE IMPROVEMENTS PROJECT**

SITE:
**1901 MAIN STREET, WALPOLE, MASSACHUSETTS**

THIS DRAWING MAY NOT BE ISSUED
FOR PROJECT TENDER OR
CONSTRUCTION, UNLESS SEALED.

COMMONWEALTH OF MASSACHUSETTS
DANIEL H. BOURDEAU
CIVIL
No. 47558
REGISTERED
PROFESSIONAL ENGINEER

SIGNATURE

08/03/2023
DATE

| | | | |
|---|---|---|---|
| DESIGN BY: | DJB | DATE: | AUGUST 2023 |
| DRAWN BY: | JD | PROJECT NO.: | BE0284 |
| CHECKED BY: | DJB | FILE: | BE0284.01-C01 |
| REVIEWED BY: | DJB | DRAWING NO.: | |
| APPROVED BY: | DJB | 1 OF 10 | |

DESIGN DRAWING

## SUMMARY OF WORK:

THE PROPOSED PROJECT INCLUDES STORMWATER DRAINAGE IMPROVEMENTS TO CAPTURE AND TREAT STORMWATER RUNOFF FROM THE INDUSTRIAL OPERATIONS AT THE SITE. THE WORK INCLUDES INSTALLATION OF NEW DRAINAGE FEATURES, RECONSTRUCTION OF TWO EXISTING STORMWATER BASINS, NORTH BASIN AND SOUTH BASIN, INSTALLATION OF OUTLET CONTROL STRUCTURES WITH PUMP LIFT STATION AT EACH BASIN, INSTALLATION OF TWO 2-INCH DIAMETER FORCE MAIN PIPES, AN EQUALIZATION TANK, AND PREPARATION OF A REINFORCED CONCRETE PAD FOR AN ACTIVE TREATMENT SYSTEM. THE ACTIVE TREATMENT SYSTEM IS TO BE DESIGNED AND INSTALLED BY A SPECIALIZED VENDOR CONTRACTED DIRECTLY WITH THE OWNER.

## GENERAL DRAWING NOTES:

1. BASE MAP AND WETLAND DELINEATION INFORMATION FROM A PLAN PREPARED BY CONCECO ENGINEERS AND SCIENTISTS IN DRAWING ENTITLED "WETLAND DELINEATION, 1901 MAIN STREET, WALPOLE, MA" AND DATED JANUARY 24, 2023.

2. THE HORIZONTAL DATUM SHOWN HEREON IS REFERENCED TO THE NORTH AMERICAN DATUM OF 1983, MASSACHUSETTS STATE PLANE MAINLAND COORDINATE SYSTEM.

3. VERTICAL DATUM SHOWN HEREIN IS REFERENCED TO THE NORTH AMERICAN VERTICAL DATUM OF 1988.

4. THE LOCUS PROPERTY IS IN ZONE X WITH A SMALL PORTION IN ZONE A AS SHOWN ON FLOOD INSURANCE RATE MAP NUMBER 25021C0332E DATED JULY 17, 2012.

5. BASE INFORMATION ON EXISTING CONDITIONS WERE RECORDED FROM AN ACTUAL ON THE GROUND SURVEY BETWEEN JANUARY 17 TO 19, 2023.

6. WETLANDS WERE DELINEATED BY LUCAS ENVIRONMENTAL ON DECEMBER 15, 2022.

7. EXISTING CONDITIONS SHOWN SHALL BE CONSIDERED APPROXIMATE AND ARE BASED ON THE BEST INFORMATION AVAILABLE. THE CONTRACTOR SHALL BE RESPONSIBLE FOR VERIFYING THAT THE PROPOSED CONDITIONS SHOWN ON THE PLANS DO NOT CONFLICT WITH KNOWN EXISTING OR OTHER PROPOSED IMPROVEMENTS. IF ANY CONFLICTS ARE DISCOVERED, THE CONTRACTOR SHOULD NOTIFY THE OWNER AND THE ENGINEER PRIOR TO INSTALLING NEW WORK.

8. THE CONTRACTOR IS SPECIFICALLY CAUTIONED THAT THE LOCATION AND/OR ELEVATION OF EXISTING UTILITIES AND STRUCTURES AS SHOWN ON THESE PLANS ARE BASED ON RECORDS OF PREVIOUS OWNERS, VARIOUS UTILITY COMPANIES, AND WHEREVER POSSIBLE, MEASUREMENTS TAKEN IN THE FIELD. THIS INFORMATION IS NOT GUARANTEED AS BEING EXACT OR COMPLETE. THE LOCATION OF ALL UNDERGROUND UTILITIES AND STRUCTURES SHALL BE VERIFIED IN THE FIELD BY THE CONTRACTOR PRIOR TO THE START OF CONSTRUCTION. THE CONTRACTOR MUST CONTACT THE APPROPRIATE UTILITY COMPANIES, ANY GOVERNING PERMITTING AUTHORITIES, AND "DIGSAFE" AT LEAST 72 HOURS PRIOR TO ANY EXCAVATION WORK IN PREVIOUSLY UNALTERED AREAS TO REQUEST EXACT FIELD LOCATION OF UTILITIES. IT SHALL BE THE RESPONSIBILITY OF THE CONTRACTOR TO RESOLVE CONFLICTS BETWEEN THE PROPOSED UTILITIES AND FIELD-LOCATED UTILITIES AND SHALL REPORT ANY DISCREPANCIES TO THE ENGINEER IMMEDIATELY. THE ENGINEER ASSUMES NO RESPONSIBILITY FOR DAMAGES INCURRED AS A RESULT OF UTILITIES OMITTED, INCOMPLETELY OR INACCURATELY SHOWN. THE CONTRACTOR SHALL BE RESPONSIBLE FOR MAINTAINING ACCURATE RECORDS OF THE LOCATION AND ELEVATION OF ALL WORK INSTALLED AND EXISTING UTILITIES FOUND DURING CONSTRUCTION FOR THE PREPARATION OF THE AS-BUILT PLAN.

## CONSTRUCTION NOTES:

1. THE SITE IS AN ACTIVE INDUSTRIAL SCRAP METAL RECYCLING FACILITY. THE CONTRACTOR SHALL BE RESPONSIBLE TO PROPERLY COORDINATE WORK AND SCHEDULE MATERIAL DELIVERIES WITH OWNER. THE MATERIAL BEING SUPPLIED BY OTHERS WILL NEED TO BE COORDINATED WITH THE OWNER AND SUBCONTRACTORS WORKING ON THE SITE. MATERIALS WILL NEED TO BE PROPERLY STOCKPILED BY THE CONTRACTOR IN A DESIGNATED STOCKPILE AREA LOCATION THAT IS APPROVED BY THE OWNER.

2. CONTRACTOR TO PROVIDE MATERIAL SUBMITTALS TO THE OWNER FOR ALL MATERIALS IMPORTING TO THE SITE. MATERIAL SUBMITTALS TO BE APPROVED BY THE OWNER/ENGINEER PRIOR TO IMPORTING TO THE SITE. DURING CONSTRUCTION THE CONTRACTOR SHALL PROVIDE COPIES OF ALL DELIVERED MATERIAL BILLS OF LADING. AT A MINIMUM THE PRE-CONSTRUCTION SUBMITTALS SHALL INCLUDE THE FOLLOWING.

- TOPSOIL - PROVIDE NAME OF SOURCE AND ORGANIC CONTENT
- CRUSHED STONE - PROVIDE NAME OF SOURCE AND TYPICAL GRAIN SIZE ANALYSIS
- DENSE GRADED CRUSHED STONE - PROVIDE NAME OF SOURCE AND TYPICAL GRAIN SIZE ANALYSIS
- RIP-RAP - PROVIDE NAME OF SOURCE AND PHOTOGRAPHIC SHOWING SIZE OF MATERIAL
- GEOTEXTILE - PROVIDE MANUFACTURER CUT SHEET INDICATING MINIMUM AVERAGE ROLL PROPERTIES
- OUTLET CONTROL STRUCTURE - PROVIDE SHOP DRAWINGS
- PRE-TREATMENT CHAMBER - PROVIDE SHOP DRAWINGS
- REINFORCED CONCRETE PAD FOR ATS - PROVIDE SHOP DRAWINGS
- CONCRETE - PROVIDE MIX DESIGN INCLUDE ANY PROPOSED ADDITIVES,  AND RESULTS OF TYPICAL COMPRESSION
- REINFORCING BARS - PROVIDE SHOP DRAWINGS
- STAINLESS STEEL - PROVIDE MANUFACTURER'S GRADE CERTIFICATION
- CORRUGATED PLASTIC PIPE - PROVIDE MANUFACTURER'S CUT SHEET
- PRECAST MANHOLE - PROVIDE SHOP DRAWINGS
- WATER QUALITY UNIT - PROVIDE SHOP DRAWINGS
- SUBGRADE - PROVIDE NAME OF SOURCE AND TYPICAL GRAIN SIZE ANALYSIS
- GEOMEMBRANE - PROVIDE MANUFACTURER'S MINIMUM AVERAGE ROLL VALUES
- HYDRODYNAMIC SEPARATOR - PROVIDE SHOP DRAWINGS
- SEED MIX - PROVIDE SOURCE SEED CERTIFICATION
- EROSION CONTROL BLANKET - PROVIDE MANUFACTURER'S CUT SHEET AND RECOMMEND INSTALLATION PROCEDURES
- COIR FIBER LOGS - PROVIDE MANUFACTURER'S CUT SHEET AND RECOMMEND INSTALLATION PROCEDURES

3. LOCATIONS OF CONTRACTOR MATERIAL STORAGE AND STAGING AREAS SHALL BE APPROVED BY THE OWNER.

4. CONTRACTOR TO BE AWARE OF ALL PERMIT CONDITIONS ISSUED AS PART OF THE ENVIRONMENTAL PERMITS FOR THE PROJECT. OWNER TO PROVIDE COPIES OF PERMITS AND CONDITIONS TO CONTRACTOR PRIOR TO CONSTRUCTION.

5. ALL SITE PREPARATION NECESSARY TO COMPLETE THIS PROJECT ARE THE SOLE RESPONSIBILITY OF THE CONTRACTOR.

6. THE CONTRACTOR SHALL MAKE ALL NECESSARY CONSTRUCTION NOTIFICATIONS AND APPLY FOR AND OBTAIN ALL REQUIRED CONSTRUCTION PERMITS.

7. THE CONTRACTOR IS RESPONSIBLE FOR MAINTAINING ALL EXISTING UTILITIES IN WORKING ORDER AND FREE FROM DAMAGE DURING THE ENTIRE DURATION OF THE PROJECT. ALL COSTS RELATED TO THE REPAIR OF UTILITIES SHALL BE THE RESPONSIBILITY OF THE CONTRACTOR. EXCAVATION REQUIRED WITHIN THE PROXIMITY OF EXISTING UTILITY LINES SHALL BE DONE BY HAND. THE CONTRACTOR SHALL REPAIR ANY DAMAGE TO EXISTING UTILITY LINES OR STRUCTURES INCURRED DURING CONSTRUCTION OPERATIONS AT NO COST TO THE OWNER.

8. ALL TRENCHING WORK WITHIN A PUBLIC OR PRIVATE ROADWAY SHALL BE COORDINATED WITH THE OWNER AND/OR PROPER LOCAL & STATE AGENCIES. TRENCH SAFETY AND RELATED PERMITS SHALL BE THE RESPONSIBILITY OF THE CONTRACTOR. THIS WORK MAY BE REQUIRED TO TAKE PLACE OUTSIDE OF NORMAL HOURS OF OPERATION FOR THE FACILITY.

9. ALL TRENCH WORK WITHIN EXISTING PAVEMENT SHALL BE NEATLY SAWCUT PER THE APPLICABLE DETAILS. TRENCH WORK BACKFILL SHALL BE PLACED AND COMPACTED IN 8-INCH LIFTS OR AS OTHERWISE INDICATED ON PLANS. CONTRACTOR SHALL BE RESPONSIBLE FOR REPAIRING ANY SETTLING DUE TO INADEQUATE COMPACTION.

10. THE CONTRACTOR SHALL MAKE ALL CONNECTION ARRANGEMENTS WITH UTILITY COMPANIES, AS NECESSARY.

11. ALL IMPORTED MATERIAL SHALL BE CLEAN AND FREE OF ANY HAZARDOUS WASTE OR OTHER CHEMICAL CONTAMINATION. NO MATERIAL WILL BE ACCEPTED FROM AN EXISTING OR FORMER 21E SITE AS DEFINED BY THE MASSACHUSETTS CONTINGENCY PLAN 310 CMR 40.0000.

12. SITE LAYOUT SURVEY REQUIRED FOR CONSTRUCTION WILL BE PROVIDED BY THE CONTRACTOR AND SHALL BE CONDUCTED BY A MASSACHUSETTS' REGISTERED PROFESSIONAL LAND SURVEYOR. THE CONTRACTOR IS RESPONSIBLE FOR COORDINATING WITH THE SURVEYOR FOR ALL SITE SURVEY WORK. THE CONTRACTOR IS RESPONSIBLE FOR PROVIDING AN AS-BUILT PLAN OF THE SITE CONDUCTED BY

REGISTERED PROFESSIONAL LAND SURVEYOR.

13. THE CONTRACTOR SHALL BE RESPONSIBLE FOR ESTABLISHING AND MAINTAINING ALL HORIZONTAL AND VERTICAL CONTROL POINTS DURING CONSTRUCTION INCLUDING BENCHMARK LOCATIONS AND ELEVATIONS AT CRITICAL AREAS.

14. THE CONTRACTOR SHALL BE RESPONSIBLE FOR MAINTAINING ALL GRADE STAKES AND MONUMENTATION. GRADE STAKES SHALL REMAIN IN PLACE UNTIL A FINAL INSPECTION OF THE SITE HAS BEEN COMPLETED BY THE ENGINEER. ANY RE-STAKING OF PREVIOUSLY SURVEYED SITE FEATURES SHALL BE THE RESPONSIBILITY (INCLUDING COST) OF THE CONTRACTOR.

15. UNLESS OTHERWISE SPECIFIED ON THE PLANS AND DETAILS/SPECIFICATIONS, ALL SITE CONSTRUCTION MATERIALS AND METHODOLOGIES ARE TO CONFORM TO THE MOST RECENT VERSION OF THE MASSACHUSETTS DEPARTMENT OF TRANSPORTATION (MASSACHUSETTS HIGHWAY DEPARTMENT) STANDARD SPECIFICATIONS (THE MASSACHUSETTS HIGHWAY DEPARTMENT 1988 STANDARD SPECIFICATIONS FOR HIGHWAYS AND BRIDGES, THE 2002 SUPPLEMENTAL SPECIFICATIONS, AND THE 2005 STANDARD SPECIAL PROVISIONS).

16. CONSTRUCTION AND/OR DEMOLITION SHALL BE PERFORMED IN ACCORDANCE WITH APPLICABLE LAWS AND REGULATIONS REGARDING NOISE, VIBRATION, DUST, SEDIMENTATION CONTAINMENT, HAZARDOUS WASTES AND TRENCH WORK.

17. SOLID WASTES AND/OR CONSTRUCTION OR DEMOLITION DEBRIS SHALL BE COLLECTED AND STORED IN A SECURED DUMPSTER. THE DUMPSTER SHALL MEET ALL LOCAL AND STATE SOLID WASTE MANAGEMENT REGULATIONS.

18. THE CONTRACTOR SHALL RESTORE ALL SITE SURFACES EQUAL TO THEIR ORIGINAL CONDITION AFTER CONSTRUCTION IS COMPLETE. AREAS NOT DISTURBED BY CONSTRUCTION SHALL BE LEFT NATURAL. THE CONTRACTOR SHALL TAKE CARE TO PREVENT DAMAGE TO SHRUBS, TREES, OTHER LANDSCAPING AND/OR NATURAL FEATURES. IF THE PLANS FAIL TO IDENTIFY ALL LANDSCAPE FEATURES, EXISTING CONDITIONS MUST BE VERIFIED BY THE CONTRACTOR PRIOR TO COMMENCEMENT OF ANY WORK.

19. UNPAVED AREAS DISTURBED BY THE WORK SHALL HAVE A MINIMUM OF 6-INCHES OF LOAM AND HYDROSEED INSTALLED AS SHOWN ON THE PLAN AND/OR DIRECTED BY THE ENGINEER. THE CONTRACTOR SHALL BE RESPONSIBLE FOR WATERING ANY LOAM AND SEEDED AREAS UNTIL GROWTH IS ESTABLISHED AND APPROVED BY THE ENGINEER AND/OR OWNER.

20. ALL PROPOSED STRUCTURES AND COMPONENTS SHALL BE DESIGNED BY THEIR MANUFACTURERS TO WITHSTAND AASHTO H-20 LOADING. PRECAST CONCRETE SHALL HAVE A MINIMUM 28-DAY STRENGTH OF 4,000 PSI UNLESS OTHERWISE SPECIFIED ON THE DRAWINGS.

21. THE CONTRACTOR SHALL PROVIDE A UNIT PRICE COST IN CUBIC YARD MEASURE FOR LEDGE AND/OR BOULDER REMOVAL. LEDGE AND/OR BOULDERS LESS THAN 1 CUBIC YARD IN SIZE BASED ON THE AVERAGE DIMENSIONS WILL NOT BE CONSIDERED PAYABLE ROCK. UNIT PRICE SHALL BE GIVEN FOR BOTH ON AND OFF SITE DISPOSAL. COST OF REPLACEMENT MATERIAL SHALL BE INCLUDED IF ADDITIONAL FILL MATERIAL IS REQUIRED.

22. DEVIATION OR ALTERATION OF THE PROPOSED WORK IS TO BE VERIFIED BY THE ENGINEER AND OWNER PRIOR TO CONDUCTING THE WORK.

23. AT THE END OF CONSTRUCTION, THE CONTRACTOR SHALL REMOVE ALL CONSTRUCTION DEBRIS AND SURPLUS MATERIALS FROM THE SITE. A THOROUGH INSPECTION OF THE WORK SITE AND PERIMETER IS TO BE MADE AND ALL DISCARDED MATERIALS AND WIND BLOWN OR WATER CARRIED DEBRIS, SHALL BE COLLECTED, AND REMOVED FROM THE SITE.

24. PROPOSED ELEVATIONS ARE SHOWN TO FINISHED PAVEMENT OR GRADE UNLESS OTHERWISE SPECIFIED.

25. PARKING AREAS AND TRAVEL LANES ARE NOT TO BE PAVED UNTIL THE ENTIRE PROPOSED DRAINAGE SYSTEM HAS BEEN INSTALLED, COMPACTED PROPERLY AND ALL PIPE CONNECTIONS COMPLETE.

26. BACKFILL ADJACENT TO PIPES AND STRUCTURES SHALL BE OF THE TYPE AND QUALITY CONFORMING TO THAT AS SPECIFIED. BACKFILL SHALL BE PLACED IN LIFTS NOT TO EXCEED EIGHT INCHES IN THICKNESS AND COMPACTED TO 95% OF MAXIMUM DRY DENSITY WITH A MOISTURE CONTENT WITHIN +/- 2% OF OPTIMUM. ALL COMPACTION IS TO BE DETERMINED BY AASHTO METHOD T-99. TESTING OF BACKFILL MATERIAL SHALL BE THE RESPONSIBILITY OF THE CONTRACTOR AND WILL BE INSPECTED BY THE ENGINEER.

## SOIL MANAGEMENT

1. THE CONTRACTOR IS REQUIRED TO MANAGE EXCAVATED SOILS IN ACCORDANCE WITH THE SITE'S SOILS MANAGEMENT PLAN PREPARED BY CONECTO ENGINEERS AND SCIENTISTS.

## HEALTH AND SAFETY

1. THE CONTRACTOR IS REQUIRED FOR THE HEALTH AND SAFETY OF THE CONTRACTOR'S EMPLOYEES AND SUBCONTRACTORS.

2. THE CONTRACTOR SHALL PREPARE A HEALTH AND SAFETY PLAN OR JOB HAZARD ANALYSIS FOR THE PROJECT AND SUBMIT TO THE OWNER AT LEAST 14 DAYS PRIOR TO CONSTRUCTION.

3. THE PROPOSED PROJECT IS LOCATED IN THE VICINITY OF THE FACILITY MAIN ENTRANCE AND MAY REQUIRE COORDINATION WITH THE FACILITY ON WORKER AND TRAFFIC SAFETY.

4. THE CONTRACTOR IS RESPONSIBLE FOR HOSTING AND DOCUMENTING DAILY TAILGATE SAFETY MEETINGS AT THE SITE. THE CONTRACTOR SHALL INVITE THE OWNER TO THE TAILGATE SAFETY MEETINGS.

5. THE OWNER CAN CONDUCT A HEALTH AND SAFETY AUDIT ON THE CONTRACTOR AT ANY TIME DURING THE CONSTRUCTION PERIOD.

6. THE CONTRACTOR SHALL UTILIZE ALL PRECAUTIONS AND MEASURES TO ENSURE THE SAFETY OF THE PUBLIC, ALL PERSONAL AND PROPERTY DURING CONSTRUCTION IN ACCORDANCE WITH OSHA STANDARDS, INCLUDING BARRICADES, SAFETY LIGHTING, CONES, POLICE DETAIL AND/OR FLAGMEN AS DETERMINED NECESSARY BY THE ENGINEER AND/OWNER. THE CONTRACTOR SHALL BE RESPONSIBLE FOR THE COST OF POLICE DETAIL AND FOR COORDINATING WITH THE LOCAL OR STATE POLICE DEPARTMENT FOR ALL REQUIRED POLICE DETAIL.

## CONSTRUCTION COMPLETION

1. THE CONTRACTOR IS REQUIRED TO COMPLETE AN AS-BUILT SURVEY OF THE COMPLETED CONSTRUCTION WORK. THE SURVEY SHALL BE SIGNED AND SEALED BY A PROFESSIONAL LAND SURVEYOR LICENSED IN THE STATE OF MASSACHUSETTS.

2. THE CONTRACTOR SHALL INVITE THE ENGINEER AND OWNER TO A PRE-FINAL JOB WALK. A PRE-FINAL PUNCH LIST WILL BE PREPARED BY THE CONTRACTOR. A FINAL JOB WALK SHALL BE CONDUCTED BY THE CONTRACTOR WITH THE ENGINEER AND OWNER ONCE THE PUNCH LIST ITEMS HAVE BEEN COMPLETED.

## EROSION AND SEDIMENT CONTROL NOTES:

1. THE CONTRACTOR SHALL INSTALL ALL SEDIMENT AND EROSION CONTROL MEASURES AS SHOWN ON THE DRAWINGS BEFORE ANY EARTH-DISTURBING ACTIVITIES COMMENCE.

2. EROSION AND SEDIMENT CONTROLS SHALL BE INSPECTED, MAINTAINED AND REPLACED AS NECESSARY THROUGHOUT CONSTRUCTION OF THE PROJECT.

3. THE CONTRACTOR SHOULD MARK OUT THE LIMIT OF WORK AND ALL WORKERS SHALL BE INFORMED THAT NO CONSTRUCTION ACTIVITY IS TO OCCUR BEYOND THE LIMIT OF WORK AT ANY TIME.

4. THE CONTRACTOR SHALL PREVENT ANY SEDIMENT TRANSPORT TO THE ADJACENT PROPERTIES DURING CONSTRUCTION AND UNTIL ACCEPTANCE BY THE OWNER/ENGINEER.

5. SOIL EROSION AND SEDIMENTATION CONTROL MEASURES SHALL BE INSPECTED AND MAINTAINED ON WEEKLY BASIS AND AFTER EACH RAINFALL EVENT OF 0.25 INCH OR GREATER DURING CONSTRUCTION. IDENTIFIED DEFICIENCIES SHALL BE CORRECTED NO LATER THAN 24 HOURS AFTER IDENTIFICATION.

6. SOIL STOCKPILES AREAS SHALL BE SURROUNDED ON THEIR PERIMETERS WITH SILT SOCK, SILT FENCE, HAYBALES, OR A COMBINATION OF SILT FENCE WITH HAYBALES.

7. DISTURBED AREAS AND SLOPES SHALL NOT BE LEFT UNATTENDED OR EXPOSED FOR EXCESSIVE PERIODS OF TIME SUCH AS DURING THE INACTIVE WINTER SEASON. THE CONTRACTOR SHOULD PROVIDE APPROPRIATE STABILIZATION PRACTICES ON ALL DISTURBED AREAS AS SOON AS POSSIBLE BUT NOT MORE THAN 14 DAYS AFTER THE CONSTRUCTION ACTIVITY IN THAT AREA HAS TEMPORARILY OR PERMANENTLY CEASED. TEMPORARY AREAS HAVING A SLOPE GREATER THAN 4:1 SHALL BE REINFORCED WITH EROSION BLANKETS OR APPROVED EQUAL UNTIL THE SITE IS PROPERLY STABILIZED. TEMPORARY SWALES MAY ALSO BE REQUIRED IF DETERMINED NECESSARY IN THE FIELD BY THE ENGINEER.

8. ALL EXITS FROM THE SITE SHALL BE SWEPT AS NECESSARY, INCLUDING ANY TRACKING TO ENSURE SEDIMENT IS CONTAINED ONSITE. PAVED AREAS SHALL BE SWEPT AS NEEDED TO REMOVE SEDIMENT OR POTENTIAL POLLUTANTS WHICH MAY ACCUMULATE DURING CONSTRUCTION ACTIVITIES.

9. ACCUMULATED SEDIMENT SHALL BE COLLECTED AND DISPOSED OF IN A PRE-APPROVED LOCATION BY THE

CONTRACTOR AS DIRECTED BY THE OWNER/ENGINEER.

10. THE CONTRACTOR SHALL PROVIDE ON SITE OR MAKE READILY AVAILABLE THE NECESSARY EQUIPMENT AND SITE PERSONNEL DURING CONSTRUCTION HOURS FOR THE DURATION OF THE PROJECT TO ENSURE ALL EROSION AND SEDIMENTATION CONTROL DEVICES ARE PROPERLY MAINTAINED AND REPAIRED IN A TIMELY AND RESPONSIBLE MANNER. IF SITE WORK IS SUSPENDED DURING THE WINTER MONTHS THE CONTRACTOR SHALL BE REQUIRED TO PROVIDE PERSONNEL AND EQUIPMENT EITHER ON SITE OR MAKE READILY AVAILABLE TO ENSURE ALL EROSION AND SEDIMENTATION CONTROL DEVICES ARE PROPERLY MAINTAINED AND REPAIRED IN A TIMELY AND RESPONSIBLE MANNER.

11. IF DEWATERING IS NECESSARY DURING CONSTRUCTION, IT SHALL BE THE RESPONSIBILITY OF THE CONTRACTOR TO IMPLEMENT PROPER MEASURES INCLUDING DEWATERING BAGS, TEMPORARY HAYBALES, SILT FENCES, SILT SOCKS AND/OR OTHER APPROVED DEVICES. THE DEWATERING MEASURES SHALL BE APPROVED BY THE OWNER/ENGINEER.

12. IT SHALL BE THE RESPONSIBILITY OF THE CONTRACTOR TO CONTROL DUST, BY WATERING OR OTHER APPROVED METHODS AS NECESSARY, OR AS DIRECTED BY THE OWNER/ENGINEER.

13. CEMENT TRUCKS MAY BE WASHED ONSITE BUT ONLY IN A DESIGNATED LINED CONCRETE WASHOUT AREA TO BE PROPERLY DISPOSED OF BY CONTRACTOR AFTER CONCRETE WORK IS COMPLETE.

14. THE CONTRACTOR IS RESPONSIBLE FOR ROUTINE INSPECTION AND MAINTENANCE DURING CONSTRUCTION OF ALL STORMWATER FACILITIES INSTALLED OR IMPACTED BY THE PROJECT. ANY SEDIMENT OR DEBRIS COLLECTED WITHIN THESE FACILITIES FROM THE PROJECT WORK SHALL BE REMOVED PRIOR TO THE OWNER'S ACCEPTANCE.

## SPECIFICATIONS

### TOPSOIL

1. TOPSOIL SHALL CONFORM TO THE REQUIREMENTS OF MASSACHUSETTS DEPARTMENT OF TRANSPORTATION 2021 STANDARD SPECIFICATIONS FOR HIGHWAY AND BRIDGES: DIVISION III INCLUDING SECTION M1.07.0.

2. TOPSOIL SHALL CONSIST OF FERTILE, FRIABLE, NATURAL TOPSOIL, REASONABLY FREE OF STUMPS, ROOTS, STIFF CLAY, STONES LARGER THAN 1 IN. IN DIAMETER, NOXIOUS WEEDS, STICKS, BRUSH OR OTHER LITTER.

3. PRIOR TO STRIPPING THE TOPSOIL FROM THE CONSTRUCTION PROJECT, IT SHALL HAVE DEMONSTRATED BY THE OCCURRENCE UPON IT OF HEALTHY CROPS, GRASS OR OTHER VEGETATIVE GROWTH, THAT IT IS REASONABLY WELL DRAINED AND CAPABLE OF SUPPORTING PLANT GROWTH. MATERIAL CLASSIFIED AS TOPSOIL CAN ONLY BE OBTAINED WITHIN THE PROJECT LIMITS.

### CRUSHED STONE

1. CRUSHED STONE SHALL CONFORM TO THE REQUIREMENTS OF MASSACHUSETTS DEPARTMENT OF TRANSPORTATION 2023 STANDARD SPECIFICATIONS FOR HIGHWAY AND BRIDGES: DIVISION III INCLUDING SECTION M2.01.0.

2. CRUSHED STONE SHALL BE DURABLE CRUSHED GRAVEL STONE OBTAINED BY ARTIFICIAL CRUSHING OF GRAVEL BOULDERS OR FIELDSTONE WITH A MINIMUM DIAMETER BEFORE CRUSHING OF 8 INCHES OR DURABLE CRUSHED ROCK CONSISTING OF THE ANGULAR FRAGMENTS OBTAINED BY BREAKING AND CRUSHING SOLID OR SHATTERED NATURAL ROCK, AND FREE FROM A DETRIMENTAL QUANTITY OF THIN, FLAT, ELONGATED OR OTHER OBJECTIONABLE PIECES

3. CRUSHED STONE SHALL BE REASONABLY FREE FROM CLAY, LOAM OR DELETERIOUS MATERIAL AND NOT MORE THAN 1.0% OF SATISFACTORY MATERIAL PASSING A NO. 200 SIEVE WILL BE ALLOWED TO ADHERE TO THE CRUSHED STONE.

### DENSE GRADED CRUSHED STONE

1. DENSE GRADED CRUSHED STONE SHALL CONFORM TO THE REQUIREMENTS OF MASSACHUSETTS DEPARTMENT OF TRANSPORTATION 2023 STANDARD SPECIFICATIONS FOR HIGHWAY AND BRIDGES: DIVISION III INCLUDING SECTION M2.01.07.

2. COARSE AGGREGATE SHALL CONSIST OF HARD, DURABLE PARTICLES OR FRAGMENTS OF STONE. MATERIALS THAT BREAK UP WHEN ALTERNATELY FROZEN AND THAWED OR WETTED AND DRIED SHALL NOT BE USED.

3. FINE AGGREGATE SHALL CONSIST OF NATURAL OR CRUSHED SAND.

### RIP-RAP

1. RIP-RAP SHALL CONFORM TO THE REQUIREMENTS OF MASSACHUSETTS DEPARTMENT OF TRANSPORTATION 2023 STANDARD SPECIFICATIONS FOR HIGHWAY AND BRIDGES: DIVISION III INCLUDING SECTION M2.02.2.

2. RIP-RAP MATERIAL SHALL CONSIST OF HARD, DURABLE, AND ANGULAR STONES THAT ARE FREE OF OVERBURDEN SOILS, SHALE, AND ORGANIC MATERIAL. THE RIP-RAP MATERIAL SHALL HAVE A MEAN DIAMETER (I.E., $D_{50}$) AS IDENTIFIED ON THE PLAN AND DETAILS.

### GEOTEXTILE

1. GEOTEXTILE SHALL CONFORM TO THE REQUIREMENTS OF MASSACHUSETTS DEPARTMENT OF TRANSPORTATION 2023 STANDARD SPECIFICATIONS FOR HIGHWAY AND BRIDGES: DIVISION III INCLUDING SECTION M9.50.0.

2. GEOTEXTILE SHALL CONFORM TO REQUIREMENTS OF AASHTO M 288 FOR THE INTENDED APPLICATION AND BE LISTED ON THE QCML.

3. GEOTEXTILE SHALL CONSIST OF MIRAFI 180N NON-WOVEN GEOTEXTILE OR EQUIVALENT.

4. GEOTEXTILE SHALL BE OVERLAPPED A MINIMUM OF 12 INCHES OR SEWN. ENDS OF GEOTEXTILE SHOULD BE BURIED.

### OUTLET CONTROL STRUCTURE

1. OUTLET CONTROL STRUCTURE SHALL BE PRECAST OR CAST IN PLACE TO CONFORM TO THE DRAWINGS AND DETAILS.

### PRE-TREATMENT CHAMBER

1. CONTRACTOR TO PROVIDE SHOP DRAWINGS FOR STEEL AND CONCRETE STRUCTURAL DESIGN OF THE PRE-TREATMENT CHAMBER. STRUCTURAL DESIGN TO BE STAMPED BY A LICENSED STRUCTURAL ENGINEER IN MASSACHUSETTS.

2. IF SEASONAL HIGH GROUNDWATER IS ENCOUNTERED DURING EXCAVATION OF BASIN, STRUCTURAL DESIGN SHALL ACCOUNT FOR BUOYANCY.

### REINFORCED CONCRETE PAD

1. CONTRACTOR TO PROVIDE SHOP DRAWINGS FOR REINFORCED CONCRETE PAD AT THE ATS. STRUCTURAL DESIGN TO BE STAMPED BY A LICENSED STRUCTURAL ENGINEER IN MASSACHUSETTS.

2. FINAL SIZE AND CONFIGURATION OF CONCRETE PAD TO BE COORDINATED WITH ATS VENDOR.

### CONCRETE

1. CONCRETE SHALL CONFORM TO THE REQUIREMENTS OF MASSACHUSETTS DEPARTMENT OF TRANSPORTATION 2023 STANDARD SPECIFICATIONS FOR HIGHWAY AND BRIDGES: DIVISION III INCLUDING SECTION M4.02.00 AND TABLES M4.02.00-1 THROUGH M4.02.00-3.

2. CONCRETE SHALL BE ALKALI SILICA REACTIVITY RESISTANT AND COMPOSED OF SPECIFIED PROPORTIONS BY WEIGHT OF CEMENT, AGGREGATES, WATER AND APPROVED ADDITIVES TO FORM A HOMOGENEOUS COMPOSITION.

3. CONCRETE SHALL BE INSTALLED AND SELECTED IN ACCORDANCE WITH THE PLAN, DETAILS, AND NOTES.

### REINFORCING BARS

1. REINFORCING BARS SHALL CONFORM TO THE REQUIREMENTS OF MASSACHUSETTS DEPARTMENT OF TRANSPORTATION 2023 STANDARD SPECIFICATIONS FOR HIGHWAY AND BRIDGES: DIVISION III INCLUDING SECTION M8.01.0.

2. REINFORCING BARS SHALL CONSIST OF DEFORMED BARS ROLLED FROM NEW BILLET STEEL CONFORMING TO THE REQUIREMENTS OF AASHTO M 31M/M 31, GRADE 60.

3. ALL STEEL REINFORCING SHALL BE WELDED IN ACCORDANCE WITH THE AWS STRUCTURAL WELDING CODE - REINFORCING (ANSI/AWS D1.4).

4. ANY FORMATION OF SURFACE RUST SHALL BE BRUSHED OFF AND REMOVED.

### STAINLESS STEEL

1. STAINLESS STEEL SHALL CONFORM TO THE REQUIREMENTS OF MASSACHUSETTS DEPARTMENT OF TRANSPORTATION 2023 STANDARD SPECIFICATIONS FOR HIGHWAY AND BRIDGES: DIVISION III INCLUDING SECTION M8.00.0.

2. STAINLESS-STEEL SHALL BE WELDED IN ACCORDANCE WITH THE AWS STRUCTURAL WELDING CODE -

STAINLESS STEEL (ANSI/AWS D1.6).

### CORRUGATED PLASTIC PIPE

1. CORRUGATED PLASTIC PIPE SHALL CONFORM TO THE REQUIREMENTS OF MASSACHUSETTS DEPARTMENT OF TRANSPORTATION 2023 STANDARD SPECIFICATIONS FOR HIGHWAY AND BRIDGES: DIVISION III INCLUDING SECTION M5.03.10.

2. PIPE SHALL CONSIST OF CORRUGATED POLYETHYLENE OR POLYPROPYLENE TUBING, FLARE ENDS, COUPLINGS AND FITTINGS.

3. MATERIALS, DIMENSIONS, PHYSICAL PROPERTIES AND FABRICATION SHALL BE IN ACCORDANCE WITH AASHTO M 294, TYPE S OR D OR AASHTO M330 TYPE S OR D.

4. CORRUGATED PLASTIC PIPE TO BE ADS N-12 ST DUAL WALLED, SMOOTH INTERIOR POLYETHYLENE PIPE WITH DIAMETER PER THE PLANS AND DETAILS.

5. PIPE OUTLET TO CONFORM TO SLOPE AT THE LOCATION OF THE OUTLET.

### PRECAST MANHOLE

1. PRECAST MANHOLES SHALL CONFORM TO THE REQUIREMENTS OF MASSACHUSETTS DEPARTMENT OF TRANSPORTATION 2023 STANDARD SPECIFICATIONS FOR HIGHWAY AND BRIDGES: DIVISION III INCLUDING SECTION M5.03.10.

2. PRECAST MANHOLES SHALL CONFORM TO THE REQUIREMENTS OF AASHTO M 199M/M 199.

3. 

4. MANHOLES SHALL BE INSTALLED IN ACCORDANCE WITH THE PLANS AND DETAILS.

### WATER QUALITY UNIT

1. PRECAST WATER QUALITY UNIT SHALL CONSIST OF A THREE CHAMBERED 5,000 GALLON WATER QUALITY INLET SUCH AS THE SHEA CONCRETE WQI19X16 OR APPROVED EQUIVALENT.

2. CONCRETE FOR THE UNIT SHALL BE 5,000 PSI MINIMUM AFTER 28 DAYS.

3. THE UNIT SHALL BE DESIGNED FOR AASHTO HS-20 LOADING, COVER 1 TO 5 FEET.

4. THE UNIT'S TONGUE AND GROOVE SHALL BE JOINT SEALED WITH BUTYL RESIN. INLET HEIGHT MAY INCREASE SLIGHTLY DUE TO THE BUTYL RESIN USED.

5. THE UNIT SHALL BE INSTALLED IN ACCORDANCE WITH THE PLANS AND DETAILS.

6. THE WATER QUALITY UNIT TO BE CONFIGURED WITH A DOUBLE CATCH BASIN GRATE AND TWO MANHOLE LIDS (ONE FOR EACH CHAMBER FOLLOWING THE CATCH BASIN INLET).

### SUBGRADE

1. SUBGRADE IN THE NORTHERN AND SOUTHER BASIN'S SHALL BE PREPARED CONSISTENT WITH THE ELEVATIONS IDENTIFIED ON THE PLANS AND DETAILS.

2. SUBGRADE SHALL BE CLEARED OF EXISTING VEGETATION AND LINING MATERIALS (IF ENCOUNTERED). SUBGRADE SHALL BE PROOF COMPACTED AND NOT HAVE PROJECTING STEEL OR PARTICLES LARGER THAN 3 INCHES.

### GEOMEMBRANE LINER

1. LINERS SHALL BE INSTALLED IN ACCORDANCE WITH THE PLAN AND DETAILS AND THE MANUFACTURER'S RECOMMENDATIONS.

2. LINER SHALL CONSIST OF A MINIMUM 20 MIL HDPE OR LDPE GEOMEMBRANE.

3. SEAMS SHALL BE SEALED WITH A WATERTIGHT SEAM.

4. CONTRACTOR TO CONDUCT A TEST OF THE INSTALLED LINER PRIOR TO COVERING THE LINER WITH SOIL MATERIALS. TEST SHALL CONSIST OF A MINIMUM OF 4 INCHES OF WATER IN THE FLOOR OF THE BASIN AND SHALL BE RUN FOR A 24 HOUR PERIOD TO DEMONSTRATE LINER HOLDS WATER WITH LESS THAN A 1 INCH DROP OVER THE 24 HOUR PERIOD.

### HYDRODYNAMIC SEPARATOR

1. HYDRODYNAMIC SEPARATOR SHALL CONSIST OF A HYDRO INTERNATIONAL 6 FT DIAMETER, 8 CFS UNIT AS SHOWN ON THE PLANS AND DETAILS UNLESS AN EQUIVALENT UNIT IS APPROVED BY THE ENGINEER.

2. HYDRODYNAMIC SEPARATOR SHALL BE INSTALLED IN ACCORDANCE WITH THE MANUFACTURERS RECOMMENDATIONS.

### SEED MIX

1. SEED MIXES SHALL BE APPLIED ON CLEAN BARE SOIL. THE MIX SHALL BE APPLIED BY HYDRO-SEEDING, MECHANICAL SPREADER, OR BY HAND. LIGHTLY RAKE, OR ROLL TO ENSURE PROPER SOIL-SEED CONTACT. BEST RESULTS ARE OBTAINED WITH A SPRING SEEDING. LATE SPRING AND SUMMER SEEDING WILL BENEFIT WITH A LIGHT MULCHING OF WEED-FREE STRAW TO CONSERVE MOISTURE. IF CONDITIONS ARE DRIER THAN USUAL, WATERING MAY BE REQUIRED BY THE CONTRACTOR. LATE FALL AND WINTER DORMANT SEEDING REQUIRE AN INCREASE IN THE SEEDING RATE BY APPROXIMATELY DOUBLE. FERTILIZATION IS NOT REQUIRED UNLESS THE SOILS ARE PARTICULARLY INFERTILE. PREPARATION OF A CLEAN WEED FREE SOIL SURFACE IS NECESSARY FOR OPTIMAL RESULTS.

2. SEED MIX SHALL CONSIST OF NEW ENGLAND CONSERVATION WILDLIFE MIX AS SPECIFIED ON THE RESTORATION PLAN.

### EROSION CONTROL BLANKET

1. EROSION CONTROL BLANKET SHALL CONFORM TO THE FOLLOWING SPECIFICATIONS: SHALL CONSIST OF BIODEGRADABLE FIBER DOUBLE NET EROSION CONTROL BLANKET SPECIFIED FOR 2(H):1(V) SLOPES OR GREATER (E.G., NORTH AMERICAN GREEN C700BN OR EQUIVALENT).

2. BLANKETS SHALL BE INSTALLED IN ACCORDANCE WITH THE PLAN AND DETAILS AND MANUFACTURER'S RECOMMENDATIONS.

### COIR FIBER LOG

1. COIR FIBER LOGS SHALL CONSIST OF 12 INCH DIAMETER COCONUT FIBER WATTLES WITH A BIODEGRADABLE NETTING AND A MINIMUM SPECIFIED LIFE OF 24 MONTHS. COIR FIBER LOGS SHALL BE INSTALLED ACCORDING TO THE MANUFACTURE'S INSTRUCTIONS.

2. WOOD STAKES SHALL CONSIST OF 1"X1"X3' LUMBER STAKES AND HAVE A DIAGONAL POINT CUT ON THE LOWER END OF THE STAKE. THE STAKE SHALL BE DRIVEN INTO THE SUBGRADE AT LEAST 24 INCHES. STAKES SHALL BE CUT 1" TO 2" ABOVE TOP OF COIR FIBER LOG.

| REVA | DATE | DESCRIPTION | DRN | APP |
|---|---|---|---|---|
| 0 | 08/18/2023 | ADDRESSING WALPOLE CONSERVATION COMMISSION COMMENTS FROM AUGUST 2023 HEARING | JD | DHB |

**Geosyntec consultants**
227 WILLOW STREET, SUITE A201
SOUTH HAMILTON, MA 01982
TELEPHONE: 603.205.8052


**ALLIED RECYCLING**
1901 MAIN STREET
WALPOLE, MA 02081
TELEPHONE: 508.668.8699

TITLE:
**GENERAL NOTES**

PROJECT:
**STORMWATER DRAINAGE IMPROVEMENTS PROJECT**

SITE:
**1901 MAIN STREET, WALPOLE, MASSACHUSETTS**

THIS DRAWING MAY NOT BE ISSUED FOR PROJECT TENDER OR CONSTRUCTION, UNLESS SEALED.

COMMONWEALTH OF MASSACHUSETTS
DANIEL H. BOURDEAU
CIVIL
No. 47558
REGISTERED PROFESSIONAL ENGINEER

| | | |
|---|---|---|
| DESIGN BY: | DJB | DATE: AUGUST 2023 |
| DRAWN BY: | JD | PROJECT NO.: BE0284 |
| CHECKED BY: | DJB | FILE: BE0284.01-C02 |
| REVIEWED BY: | DJB | DRAWING NO.: |
| APPROVED BY: | DJB | 2 OF 10 |

## LEGEND

— 355 — EXISTING GROUND MAJOR CONTOUR (5')

EXISTING GROUND MINOR CONTOUR (1')

PROPERTY BOUNDARY

WETLAND BOUNDARY

— · · — 25-FT NO ALTERATION BOUNDARY

— — — 100 FT BUFFER ZONE

TREE LINE

EXISTING SITE ACCESS ROAD

EXISTING FENCE

NHESP ESTIMATED HABITATS OF RARE WILDLIFE

## NOTES

1. REFER TO SHEET 2 FOR GENERAL NOTES.

2. EXISTING SITE FEATURES SHALL BE PROTECTED THROUGHOUT THE WORK UNLESS OTHERWISE INDICATED ON THE DRAWINGS.

3. ESTIMATED SEASONAL HIGH GROUNDWATER REPORTED AT APPROXIMATELY ELEVATION 189 FT NAVD88 BASED ON TEST PITS PERFORMED BY CONECO ENGINEERING ON 8/3/2010 IN THE VICINITY OF THE NORTH BASIN.

NON-FERROUS PROCESSING BUILDING

NON-FERROUS PROCESSING TRAILERS

NORTH BASIN

SOUTH BASIN

SWPPP SAMPLING POINT 1

SWPPP SAMPLING POINT 2

N

0    50    100
SCALE IN FEET

MAIN STREET ROUTE 1A

| REVA | DATE | DESCRIPTION | DRN | APP |
|---|---|---|---|---|
| 0 | 08/18/2023 | ADDRESSING WALPOLE CONSERVATION COMMISSION COMMENTS FROM AUGUST 2023 HEARING | JD | DHB |

**Geosyntec** consultants
227 WILLOW STREET, SUITE A201
SOUTH HAMILTON, MA 01982
TELEPHONE: 603.205.8052

**ALLIED RECYCLING**
1901 MAIN STREET
WALPOLE, MA 02081
TELEPHONE: 508.668.8699

TITLE:
### EXISTING CONDITIONS

PROJECT:
### STORMWATER DRAINAGE IMPROVEMENTS PROJECT

SITE:
### 1901 MAIN STREET, WALPOLE, MASSACHUSETTS

THIS DRAWING MAY NOT BE ISSUED FOR PROJECT TENDER OR CONSTRUCTION, UNLESS SEALED.

COMMONWEALTH OF MASSACHUSETTS
DANIEL H. BOURDEAU
CIVIL
No. 47558
REGISTERED PROFESSIONAL ENGINEER

SIGNATURE
08/03/2023
DATE

| | | |
|---|---|---|
| DESIGN BY: | DJB | DATE: AUGUST 2023 |
| DRAWN BY: | JD | PROJECT NO.: BE0284 |
| CHECKED BY: | DJB | FILE: BE0284.01-C03 |
| REVIEWED BY: | DJB | DRAWING NO.: |
| APPROVED BY: | DJB | 3 OF 10 |

DESIGN DRAWING

## LEGEND

| | |
|---|---|
| —355— | EXISTING GROUND MAJOR CONTOUR (5') |
| | EXISTING GROUND MINOR CONTOUR (1') |
| — · — · — | PROPERTY BOUNDARY |
| | WETLAND BOUNDARY |
| — · · — · · — | 25-FT NO ALTERATION BOUNDARY |
| | 100 FT BUFFER ZONE |
| | EXISTING SITE ACCESS ROAD |
| | EXISTING FENCE |
| —310— | PROPOSED GRADING MAJOR CONTOURS (5') |
| —312— | PROPOSED GRADING MINOR CONTOURS (1') |
| — ·· — ·· — | PROPOSED GRADING LIMIT |
| | APPROX. LIMITS OF FUTURE WETLAND RESTORATION AREA C |
| ////// | NHESP ESTIMATED HABITATS OF RARE WILDLIFE |

NOTE:

1. FUTURE WETLAND RESTORATION AREA NOT PART OF THIS PROJECT OR APPLICATION AND SHOWN FOR REFERENCE ONLY)

SCALE IN FEET: 0 — 30 — 60

### Geosyntec consultants
227 WILLOW STREET, SUITE A201
SOUTH HAMILTON, MA 01982
TELEPHONE: 603.205.8052

### ALLIED RECYCLING
1901 MAIN STREET
WALPOLE, MA 02081
TELEPHONE: 508.668.8699

TITLE: **PROPOSED CONDITIONS**

PROJECT: STORMWATER DRAINAGE IMPROVEMENTS PROJECT

SITE: 1901 MAIN STREET, WALPOLE, MASSACHUSETTS

| | | | |
|---|---|---|---|
| 0 | 08/18/2023 | ADDRESSING WALPOLE CONSERVATION COMMISSION COMMENTS FROM AUGUST 2023 HEARING | JD | DHB |
| REVA | DATE | DESCRIPTION | DRN | APP |

THIS DRAWING MAY NOT BE ISSUED FOR PROJECT TENDER OR CONSTRUCTION, UNLESS SEALED.

COMMONWEALTH OF MASSACHUSETTS
DANIEL H. BOURDEAU
CIVIL
No. 47558
REGISTERED PROFESSIONAL ENGINEER

| | | | |
|---|---|---|---|
| DESIGN BY: | DJB | DATE: | AUGUST 2023 |
| DRAWN BY: | JD | PROJECT NO.: | BE0284 |
| CHECKED BY: | DJB | FILE: | BE0284.01-C04 |
| REVIEWED BY: | DJB | DRAWING NO.: | 4 OF 10 |
| APPROVED BY: | DJB | | |

DESIGN DRAWING

EX. CATCH BASIN
RIM ELEV. 199.12
SUMP ELEV. 189.40

CUT OR EXTEND EXISTING PIPES AT SIDE SLOPE

10'x17' WATER QUALITY INLET WITH DOUBLE CATCH BASIN
RIM EL=196.94
SUMP EL 191.80
18' DIA CPP INV OUT EL=194.00

24" DIA CPP @ 0.0%

HS-1
HYDRODYNAMIC SEPARATOR
RIM EL=196.93
18" DIA CPP INV EL=193.80
18" DIA CPP INV EL=193.80

24" DIA CPP @ 0.9%

NORTH STORMWATER BASIN

TEMPORARY RISER

OCS-1 OUTLET CONTROL STRUCTURE

PERIMETER COMPOST SOCK

PEDESTAL WITH PUMP ALARM CONTROL PANEL WITH AUDIBLE / VISUAL ALARM

2 - 2"Ø FORCEMAIN (RECIRCULATION AND BACKFLUSH FROM ACTIVE TREATMENT SYSTEM)

10,000 GAL EQ TANK (TYPE TO BE COORDINATED WITH ATS PROVIDER)

INFLUENT TRANSFER PUMP GOULD RED JACKET SERIES 4WS15DM (PUMP SCHEDULE ON DRAWING 9)

4"Ø INFLUENT FORCEMAIN

DIVERSION BERM

20'X50' AREA FOR ACTIVE TREATMENT SYSTEM AND 30'X60' REINFORCED CONCRETE PAD (TO BE COORDINATED WITH ATS SUPPLIER)

GRAVEL PAD

MH-1
72" DIA MANHOLE
RIM EL=196.54
SUMP EL=191.87
18" DIA CPP INV OUT EL=192.90
18" DIA CPP INV OUT EL=192.00

CB-1
2FT X 2FT DEEP SUMP CATCH BASIN
RIM EL: 194.93
INV. OUT EL: 192.80

CONCRETE SWALE

TEMPORARY RISER

OCS-2 OUTLET CONTROL STRUCTURE

3" Ø FORCEMAIN
INV OUT EL: 191.10

24" DIA CPP @ 1.0%
INV OUT EL 191.10

18" DIA CPP @ 0.6%
INV OUT EL: 191.60

3" Ø FORCEMAIN

OCS-3
OUTLET CONTROL STRUCTURE
RIM EL=197.07
18" DIA CPP INV EL=193.62
18" DIA CPP INV IN EL: 193.62
INV OUT EL: 193.31

HEADWALL
ENERGY DISSIPATION PAD

SOUTH STORMWATER BASIN

PEDESTAL WITH PUMP ALARM CONTROL PANEL WITH AUDIBLE / VISUAL ALARM

CAST-IN-PLACE PRETREATMENT CHAMBER CONCRETE STRUCTURE

PERIMETER OF COMPOST SOCK

SCALE IN FEET — 0 30 60

## LEGEND

- —355— EXISTING GROUND MAJOR CONTOUR (5')
- EXISTING GROUND MINOR CONTOUR (1')
- PROPERTY BOUNDARY
- WETLAND BOUNDARY
- 25-FT NO ALTERATION BOUNDARY
- 100 FT BUFFER ZONE
- EXISTING SITE ACCESS ROAD
- EXISTING FENCE
- —310— PROPOSED GRADING MAJOR CONTOURS (5')
- —312— PROPOSED GRADING MINOR CONTOURS (1')
- PROPOSED GRADING LIMIT
- APPROX. LIMITS OF FUTURE WETLAND RESTORATION AREA C
- —CS— PERIMETER OF COMPOST SOCK
- NHESP ESTIMATED HABITATS OF RARE WILDLIFE

NOTE:
1. FUTURE WETLAND RESTORATION AREA NOT PART OF THIS PROJECT OR APPLICATION AND SHOWN FOR REFERENCE ONLY)

**Geosyntec consultants**
227 WILLOW STREET, SUITE A201
SOUTH HAMILTON, MA 01982
TELEPHONE: 603.205.8052

**ALLIED RECYCLING**
1901 MAIN STREET
WALPOLE, MA 02081
TELEPHONE: 508.668.8699

| REVA | DATE | DESCRIPTION | DRN | APP |
|---|---|---|---|---|
| 0 | 08/18/2023 | ADDRESSING WALPOLE CONSERVATION COMMISSION COMMENTS FROM AUGUST 2023 HEARING | JD | DHB |

TITLE: TEMPORARY EROSION AND SEDIMENT CONTROLS

PROJECT: STORMWATER DRAINAGE IMPROVEMENTS PROJECT

SITE: 1901 MAIN STREET, WALPOLE, MASSACHUSETTS

THIS DRAWING MAY NOT BE ISSUED FOR PROJECT TENDER OR CONSTRUCTION, UNLESS SEALED.

COMMONWEALTH OF MASSACHUSETTS
DANIEL H. BOURDEAU
CIVIL
No. 47558
REGISTERED PROFESSIONAL ENGINEER

| DESIGN BY: | DJB | DATE: | AUGUST 2023 |
|---|---|---|---|
| DRAWN BY: | JD | PROJECT NO.: | BE0284 |
| CHECKED BY: | DJB | FILE: | BE0284.01-C05 |
| REVIEWED BY: | DJB | DRAWING NO.: | 5 OF 10 |
| APPROVED BY: | DJB | | |

DESIGN DRAWING



A-A' / 4 PROFILE
NORTH BASIN - DISCHARGE TO OUTLET CONTROL STRUCTURE
SCALE: H: 1" = 20'  V: 1"=10'

OUTLET CONTROL STRUCTURE
RIM EL: 194.50
SUMP EL: 191.00
EL = 191.00
INV EL = 193.10
INV EL = 193.02



C-C' / 4 PROFILE
ACTIVE TREATMENT SYSTEM DISCHARGE TO WETLAND
SCALE: H: 1" = 20'  V: 1"=10'

CATCH BASIN
RIM EL = 196.95
HEADWALL
ENERGY DISSIPATION PAD
18" DIA CPP
INV IN EL: 193.62
INV OUT EL: 193.25





B-B' / 4 PROFILE
SOUTH BASIN - DISCHARGE TO PRETREATMENT STRUCTURE
SCALE: H: 1" = 20'  V: 1"=10'

10'X17' WATER QUALITY INLET WITH DOUBLE CATCH BASIN
RIM EL: 196.94
SUMP EL: 191.80
10' OF 24" DIA CPP @ 1.0%

PRE-TREATMENT CHAMBER CONCRETE STRUTURE
72" DIA. MANHOLE
RIM EL: 196.54
SUMP EL: 191.87
HYDRODYNAMIC SEPARATOR
RIM EL: 196.93
SUMP EL: 193.77
FF EL = 188.00
87' OF 24" DIA CPP @ 1.0%
94' OF 24" DIA CPP @ 1.0%
INV EL: 192.00
INV EL: 192.87
INV EL: 192.97
INV EL: 193.90
INV EL: 193.90
INV EL: 194.00



| REVA | DATE | DESCRIPTION | DRN | APP |
|---|---|---|---|---|
| 0 | 08/18/2023 | ADDRESSING WALPOLE CONSERVATION COMMISSION COMMENTS FROM AUGUST 2023 HEARING | JD | DHB |

Geosyntec consultants
227 WILLOW STREET, SUITE A201
SOUTH HAMILTON, MA 01982
TELEPHONE: 603.205.8052

ALLIED RECYCLING
1901 MAIN STREET
WALPOLE, MA 02081
TELEPHONE: 508.668.8699

TITLE:
STORMWATER PIPE PROFILES

PROJECT:
STORMWATER DRAINAGE IMPROVEMENTS PROJECT

SITE:
1901 MAIN STREET, WALPOLE, MASSACHUSETTS

THIS DRAWING MAY NOT BE ISSUED FOR PROJECT TENDER OR CONSTRUCTION, UNLESS SEALED.

COMMONWEALTH OF MASSACHUSETTS
DANIEL H. BOURDEAU
CIVIL
No. 47558
REGISTERED PROFESSIONAL ENGINEER

| | | |
|---|---|---|
| DESIGN BY: | DJB | DATE: AUGUST 2023 |
| DRAWN BY: | JD | PROJECT NO.: BE0284 |
| CHECKED BY: | DJB | FILE: BE0284.01-C06 |
| REVIEWED BY: | DJB | DRAWING NO.: |
| APPROVED BY: | DJB | 6 OF 10 |



DESIGN DRAWING

# CROSS SECTION D-D'
## SOUTHERN BASIN

Labels: ANCHOR TRENCH (TYP), SEED AND EROS ON CONTROL BLANKET ON SIDE SLOPES, BATHYMETRY GRADE, FINISH GRADE, E ISTING GROUND, SUBGRADE, 1-FT THICK LAYER OF TOP SOIL, 1-FT DENSE GRADED CRUSHED STONE, NON-WOVEN GEOTEXTILE, GEOMEMBRANE

DISTANCE (FEET) — ELEVATION (FEET)

# DETAIL
## ANCHOR TRENCH
### NOT TO SCALE

Labels: EXISTING GRADE, SEED AND EROSION CONTROL BLANQUET ON SIDE SLOPES, NON-WOVEN GEOTEXTILE, GEOMEMBRANE, ANCHOR TRENCH, 1-FT THICK LAYER OF TOP SOIL

# CROSS SECTION E-E'
## SOUTHERN BASIN

Labels: CAST IN PLACE PRETREATMENT CHAMBER, EXISTING GROUND, FINISH GRADE, EL = 188.00, SUBGRADE, STAINLESS STEEL BULKHEAD (LINER TO CONCRETE CONNECTION), ANCHOR TRENCH (TYP), SEED AND EROSION CONTROL BLANKET ON SIDE SLOPES, 1-FT THIC LAYER OF TOP SOIL, 1-FT DENSE GRADED CRUSHED STONE, NON-WOVEN GEOTEXTILE, GEOMEMBRANE

DISTANCE (FEET) — ELEVATIO (FEET)

# CROSS SECTION F-F'
## NORTHERN BASIN

Labels: ANCHOR TRENCH (TYP), SEED AND EROSION CONTROL BLANKET ON SIDE SLOPES, FINISH GRADE, BATHYMETRY GRADE, EL= 191.00, E ISTING GROUND, SUBGRADE, 1-FT THICK LAYER OF TOP SOIL, 1-FT DENSE GRADED CRUSHED STONE, NON-WOVEN GEOTEXTILE, GEOMEMBRANE

DISTANCE (FEET) — ELEVATION (FEET)

# CROSS SECTION G-G'
## NORTHERN BASIN

Labels: ANCHOR TRENCH (TYP), SEED AND EROSION CONTROL BLANKET ON SIDE SLOPES, FINISH GRADE, BATHYMETRY GRADE, EL= 191.00, EXISTING GROUND, SUBGRADE, 1-FT THICK LAYER OF TOP SOIL, 1-FT DENSE GRADED CRUSHED STONE, NON-WOVEN GEOTEXTILE, GEOMEMBRANE

DISTANCE (FEET) — ELEVATION (FEE )

NOTE:
1.  GEOSYNTETICS ARE NOT TO SCALE.

SCALE IN FEET
HORIZONTAL AND VERTICAL
0    10'    20'

| REVA | DATE | DESCRIPTION | DRN | APP |
|---|---|---|---|---|
| 0 | 08/18/2023 | ADDRESSING WALPOLE CONSERVATION COMMISSION COMMENTS FROM AUGUST 2023 HEARING | JD | DHB |

**Geosyntec** consultants
227 WILLOW STREET, SUITE A201
SOUTH HAMILTON, MA 01982
TELEPHONE: 603.205.8052

**ALLIED RECYCLING**
1901 MAIN STREET
WALPOLE, MA 02081
TELEPHONE: 508.668.8899

TITLE: **BASINS CROSS SECTIONS**

PROJECT: **STORMWATER DRAINAGE IMPROVEMENTS PROJECT**

SITE: **1901 MAIN STREET, WALPOLE, MASSACHUSETTS**

THIS DRAWING MAY NOT BE ISSUED FOR PROJECT TENDER OR CONSTRUCTION, UNLESS SEALED.

COMMONWEALTH OF MASSACHUSETTS
DANIEL H. BOURDEAU
CIVIL
No. 47558
REGISTERED
PROFESSIONAL ENGINEER

SIGNATURE
08/03/2023
DATE

| DESIGN BY: | DJB | DATE: | AUGUST 2023 |
|---|---|---|---|
| DRAWN BY: | JD | PROJECT NO.: | BE0284 |
| CHECKED BY: | DJB | FILE: | BE0284.01-C07 |
| REVIEWED BY: | DJB | DRAWING NO.: | 7 OF 10 |
| APPROVED BY: | DJB | | |

DESIGN DRAWING



DESIGN DRAWING



**PLAN VIEW**

NOTES:
1. CONCRETE: 5,000 PSI MINIMUM AFTER 28 DAYS.
2. DESIGNED FOR AASHTO HS-20 LOADING, COVER 1 TO 5 FEET.
3. TONGUE AND GROOVE JOINT SEALED WITH BUTYL RESIN. INLET HEIGHT MAY INCREASE SLIGHTLY DUE TO THE BUTYL RESIN USED.

| GALLONS | A (HEIGHT) | B (INLET) | C (BAFFLE) | WEIGHT (LBS) |
|---|---|---|---|---|
| 5,000 | 92" | 56" | 56" | 58,180 |

**9 / 4  DETAIL**
WQI9X16 SHAE WATER QUALITY INLET
NOT TO SCALE

**OCS-2 OVERFLOW TRASH DETAIL**

**SECTION A-A'**

| STRUCTURE | BOTTOM OF BASIN ELEVATION | INV EL AT ORIFICE | INV EL AT OUTLET PIPE | OVERFLOW TRASH RACK EL |
|---|---|---|---|---|
| NORTH OCS NO. 1 | 191.0 | 192.5 | 193.1 | 194.50 |
| SOUTH OCS NO. 2 | 188.0 | 192.2 | 192.0 (NOTE 1) | 194.5 |

NOTES:
1. CONTRACTOR TO VERIFY INVERT ELEVATIONS OF EXISTING HYDRODYNAMIC SEPARATOR AND INVERT OF EXISTING OUTFALL TO WETLANDS. INVERT OUTLET FROM OUTLET CONTROL STRUCTURE MAY NEED TO BE ADJUSTED TO ACHIEVE POSITIVE DRAINAGE INTO WETLAND.

| PUMP DETAIL SCHEDULE - GOULDS WATER TECHNOLOGY RED JACKET SERIES | | | | | | |
|---|---|---|---|---|---|---|
| PUMP | DIAMETER | PUMP | HIGH FLOAT ALARM ELEVATION (FT) | REQUIRED GPM (GALLONS PER MINUTE) | RPM (ROTATIONS PER MINUTE) | REQUIRED TDH (TOTAL DYNAMIC HEAD, FT) |
| NORTH BASIN | 3" | 3WS15DM | 194.75 | 40 | 1750 | 13 |
| SOUTH BASIN | 3" | 3WS15D | 193.75 | 80 | 1750 | 20 |
| EQ TANK TO ATS | 4" | 4WS15DM | PROVIDED BY MANUFACTURER | 125 | 1750 | 1 |

NOTE:
1. CONTACT EDWARD JAMIESON IN CASE OF ALARM. CELL: (617) 217-8626. OFFICE: (508) 668-8699.

**10 / 4  DETAIL**
OUTLET CONTROL STRUCTURE
NOT TO SCALE

**SECTION B-B'**
(FLOW CONTROL PLATE VIEW)

**SECTION C-C'**
(TOP VIEW OF FLOW CONTROL PLATE)
NTS

R VALUE = (NET OPEN AREA)/ (GROSS RACK AREA) = 0.60

SCREEN NOTES:

WQCV TRASH RACK
1. WELL-SCREEN TRASH RACK SHALL BE STAINLESS STEEL AND SHALL BE ATTACHED BY INTERMITTENT WELDS ALONG THE EDGE OF THE MOUNTING FRAME.
2. BAR GRATE TRASH RACK SHALL BE STAINLESS STEEL AND SHALL BE BOLTED USING STAINLESS STEEL HARDWARE.
3. TRASH RACK WIDTH IS FOR SPECIFIED TRASH RACK MATERIAL. FINER WELL-SCREEN OR MESH SIZE OTHER THAN SPECIFIED IS ACCEPTABLE, HOWEVER, TRASH RACK DIMENSIONS NEED TO BE ADJUSTED FOR MATERIALS HAVING A DIFFERENT OPEN AREA/GROSS AREA RATIO (R VALUE).
4. STRUCTURAL DESIGN OF TRASH RACK SHALL BE BASED ON FULL HYDROSTATIC HEAD WITH ZERO HEAD DOWNSTREAM OF THE RACK.

**12 / -  DETAIL**
RISER OVERFLOW STRUCTURE
NOT TO SCALE

**CROSS SECTION X-X'**

**PLAN VIEW**

**11 / 4  DETAIL**
CAST IN PLACE PRETREATMENT CHAMBER
NOT TO SCALE

**CROSS SECTION Y-Y'**

**Geosyntec** consultants
227 WILLOW STREET, SUITE A201
SOUTH HAMILTON, MA 01982
TELEPHONE: 603.205.8052

**ALLIED RECYCLING**
1901 MAIN STREET
WALPOLE, MA 02081
TELEPHONE: 508.668.8699

| 0 | 08/18/2023 | ADDRESSING WALPOLE CONSERVATION COMMISSION COMMENTS FROM AUGUST 2023 HEARING | JD | DHB |
|---|---|---|---|---|
| REVA | DATE | DESCRIPTION | DRN | APP |

TITLE: **DETAILS II**

PROJECT: STORMWATER DRAINAGE IMPROVEMENTS PROJECT

SITE: **1901 MAIN STREET, WALPOLE, MASSACHUSETTS**

THIS DRAWING MAY NOT BE ISSUED FOR PROJECT TENDER OR CONSTRUCTION, UNLESS SEALED.

COMMONWEALTH OF MASSACHUSETTS
DANIEL H. BOURDEAU
CIVIL
No. 47558
REGISTERED
PROFESSIONAL ENGINEER

| DESIGN BY: | DJB | DATE: | AUGUST 2023 |
|---|---|---|---|
| DRAWN BY: | JD | PROJECT NO: | BE0284 |
| CHECKED BY: | DJB | FILE: | BE0284.01-C09 |
| REVIEWED BY: | DJB | DRAWING NO.: | |
| APPROVED BY: | DJB | **9** OF **10** | |

DESIGN DRAWING



HARD SURFACE
PUBLIC ROAD

50'

6" MIN

N.S.A. R-2 (1.5"-3.5")
COARSE AGGREGATE

PER
STREET
WIDTH

GEOTEXTILE UNDERLINER

NOTE:
1. CRUSHED STONE CONSTRUCTION ENTRANCE MAY
   BE REPLACED BY WHEEL WASH FACILITY.
2. LOCATION OF CRUSHED STONE ENTRANCE TO BE
   DETERMINED BY CONTRACTOR IF NECESSARY.

13 / 5    DETAIL
CRUSHED STONE CONSTRUCTION ENTRANCE
NOT TO SCALE

TRASH GUARD
ON TOP OF PIPE

CONE OF 1/2 - TO 3/4"
AGGREGATE, 2:1, H:V
SIDE SLOPES

2' VERTICAL RISER, 6" HDPE PIPE,
PERFORATED WITH 1/2-INCH HOLES
SPACED APPROXIMATELY 3"

6" HDPE SOLID PIPE
(TO CONNECT TO EXISTING
OUTLET PIPE IN BASIN)

BASIN BOTTOM

6" MIN. FLANGE WIDTH

CONCRETE FOOT
8" MIN. BOTTOM THICKNESS

14 / 5    DETAIL
TEMPORARY RISER
NOT TO SCALE



FINISHED GRADE

4" THICK
CONCRETE

BOTTOM
WIDTH 1 ft.

MINIMUM
DEPTH 0.5 ft.

3    1        1    3

COMPACTED
SUBGRADE

CHANNEL LINING THICKNESS (F)

6x6 W1.4x1.4 WWF REINF.
AT MID-DEPTH

NOTE:
1. CONCRETE SWALE TO PROVIDE POSITIVE
   DRAINAGE FROM PAVEMENT DRIVE TO NORTH BASIN.

15 / 4    DETAIL
CONCRETE SWALE
NOT TO SCALE



## SAMPLE NO ALTERATION PLAQUE DESIGN

SAMPLE NO ALTERATION PLAQUE DESIGN FOR WALPOLE CONSERVATION COMMISSION AS
REQUIRED UNDER THE WALPOLE WETLANDS PROTECTION BYLAW.

SIGNS ARE TO BE AT LEAST 3" X 5" ON BRASS OR OUTDOOR GRADE PLASTIC MOUNTED WITH
SCREWS AND OUTDOOR GRADE EPOXY ON CONCRETE OR GRANITE POSTS, BOULDERS OR
ON SPLIT RAIL FENCE AS INSTRUCTED WITHIN THE ORDER OF CONDITIONS.

**PLEASE NOTE, ANY UNALTERED BUFFER ZONE MUST HAVE MONUMENTS INSTALLED
DEPICTING IT IS A NO-ALTERATION ZONE WITH A MINIMUM 25FT NO ALTERATION AREA AS
PER THE TOWN OF WALPOLE BYLAW.**

**NO DUMPING OR ALTERATION
OF LANDS BEYOND THIS POINT**

**PER ORDER OF THE
CONSERVATION COMMISSION**

16 / 4    DETAIL
SAMPLE NO ALTERATION PLAQUE DESIGN
NOT TO SCALE

## EROSION AND SEDIMENT CONTROL NOTES:

1. THE CONTRACTOR SHALL ATTEND A PRECONSTRUCTION MEETING WITH THE TOWN OF WALPOLE CONSERVATION COMMISSION IN ADVANCE OF ANY CONSTRUCTION ACTIVITIES.
2. THE CONTRACTOR SHALL INSTALL ALL SEDIMENT AND EROSION CONTROL MEASURES AS SHOWN ON THE DRAWINGS BEFORE ANY EARTH-DISTURBING ACTIVITIES COMMENCE.
3. EROSION AND SEDIMENT CONTROLS SHALL BE INSPECTED, MAINTAINED AND REPLACED AS NECESSARY THROUGHOUT CONSTRUCTION OF THE PROJECT.
4. THE CONTRACTOR SHOULD BE AWARE OF THE LIMIT OF WORK AND ALL WORKERS SHALL BE INFORMED THAT NO CONSTRUCTION ACTIVITY IS TO OCCUR BEYOND THE LIMIT OF WORK AT ANY TIME.
5. THE CONTRACTOR SHALL PREVENT ANY SEDIMENT TRANSPORT TO THE ADJACENT PROPERTIES DURING CONSTRUCTION AND UNTIL ACCEPTANCE BY THE OWNER/ENGINEER.
6. SOIL EROSION AND SEDIMENTATION CONTROL MEASURES SHALL BE INSPECTED AND MAINTAINED ON WEEKLY BASIS AND AFTER EACH RAINFALL EVENT OF 0.25 INCH OR GREATER DURING CONSTRUCTION. IDENTIFIED DEFICIENCIES SHALL BE CORRECTED NO LATER THAN 24 HOURS AFTER IDENTIFICATION.
7. SOIL STOCKPILES AREAS SHALL BE SURROUNDED ON THEIR DOWNGRADIENT PERIMETERS WITH SILT SOCK.
8. DISTURBED AREAS AND SLOPES SHALL NOT BE LEFT UNATTENDED OR EXPOSED FOR EXCESSIVE PERIODS OF TIME SUCH AS DURING THE INACTIVE WINTER SEASON. THE CONTRACTOR SHOULD PROVIDE APPROPRIATE STABILIZATION PRACTICES ON ALL DISTURBED AREAS AS SOON AS POSSIBLE BUT NOT MORE THAN 14 DAYS AFTER THE CONSTRUCTION ACTIVITY IN THAT AREA HAS TEMPORARILY OR PERMANENTLY CEASED, TEMPORARY AREAS HAVING A SLOPE GREATER THAN 4:1 SHALL BE REINFORCED WITH EROSION BLANKETS OR APPROVED EQUAL UNTIL THE SITE IS PROPERLY STABILIZED. TEMPORARY SWALES MAY ALSO BE REQUIRED IF DETERMINED NECESSARY IN THE FIELD BY THE ENGINEER.
9. THE CONTRACTOR SHALL PROVIDE ON SITE OR MAKE READILY AVAILABLE THE NECESSARY EQUIPMENT AND SITE PERSONNEL DURING CONSTRUCTION HOURS FOR THE DURATION OF THE PROJECT TO ENSURE ALL EROSION AND SEDIMENTATION CONTROL DEVICES ARE PROPERLY MAINTAINED AND REPAIRED IN A TIMELY AND RESPONSIBLE MANNER. IF SITE WORK IS SUSPENDED DURING THE WINTER MONTHS THE CONTRACTOR SHALL BE REQUIRED TO PROVIDE PERSONNEL AND EQUIPMENT EITHER ON SITE OR MAKE READILY AVAILABLE TO ENSURE ALL EROSION AND SEDIMENTATION CONTROL DEVICES ARE PROPERLY MAINTAINED AND REPAIRED IN A TIMELY AND RESPONSIBLE MANNER.
10. IT SHALL BE THE RESPONSIBILITY OF THE CONTRACTOR TO CONTROL DUST, BY WATERING, VEGETATIVE COVER, MULCH OR OTHER APPROVED METHODS AS NECESSARY, OR AS DIRECTED BY THE ENGINEER AT NO EXTRA COST TO THE OWNER.
11. THE CONTRACTOR SHALL STABILIZE THE CONSTRUCTION ENTRANCE AS DESCRIBED IN THE MASSACHUSETTS EROSION AND SEDIMENT CONTROL GUIDELINES FOR URBAN AND SUBURBAN AREAS (MAY 2003). TIRES SHALL BE WASHED BEFORE THE VEHICLES ENTER THE ROAD. THE WASH AREA SHALL BE A LEVEL AREA WITH 3-INCH WASHED STONE MINIMUM OR A COMMERCIAL RACK. WASH WATER SHOULD BE DIRECTED INTO A SEDIMENT TRAP, A VEGETATED FILTER STRIP, OR ANOTHER APPROVED SEDIMENT TRAPPING DEVICE. SEDIMENT SHOULD BE PREVENTED FROM ENTERING ANY WATERCOURSES.
12. IF DEWATERING IS NECESSARY DURING CONSTRUCTION, IT SHALL BE THE RESPONSIBILITY OF THE CONTRACTOR TO IMPLEMENT PROPER MEASURES INCLUDING DEWATERING BAGS, TEMPORARY HAYBALES, SILT SOCKS AND/OR OTHER APPROVED DEVICES. THE DEWATERING MEASURES SHALL BE APPROVED BY THE ENGINEER.
13. CONTRACTOR SHALL PROVIDE A DESIGNATED CONCRETE WASHOUT FOR CONCRETE WORKS. WASTE CONCRETE SHALL BE DISPOSED OF IN ACCORDANCE WITH LOCAL, STATE AND FEDERAL RULES.
14. THE CONTRACTOR IS RESPONSIBLE FOR ROUTINE INSPECTION AND MAINTENANCE DURING CONSTRUCTION OF ALL STORMWATER FACILITIES INSTALLED OR IMPACTED BY THE PROJECT. ANY SEDIMENT OR DEBRIS COLLECTED WITHIN THESE FACILITIES FROM THE PROJECT WORK SHALL BE REMOVED PRIOR TO THE OWNER'S ACCEPTANCE.

### SEQUENCE OF CONSTRUCTION

THE FOLLOWING SEQUENCE IS A GUIDE FOR CONSTRUCTION AND MAY BE MODIFIED BY THE CONTRACTOR BASED ON WEATHER CONDITIONS, CONSTRUCTION MATERIAL AVAILABILITY AND CONSTRUCTABILITY.

1. ATTEND PRECONSTRUCTION MEETING WITH TOWN OF WALPOLE CONSERVATION COMMISSION.
2. INSTALL TEMPORARY EROSION AND SEDIMENT CONTROLS AND MAINTAIN THROUGHOUT CONSTRUCTION.
3. PREPARE ACTIVE TREATMENT SYSTEM (ATS) PAD.
4. EXPAND AND RECONSTRUCT NORTHERN BASIN. BASIN CONSTRUCTION SHOULD TARGET PERIODS OF DRY WEATHER. HOWEVER, IF STORMWATER ACCUMULATES IN BASIN DURING CONSTRUCTION, STORMWATER SHOULD BE DEWATERED INTO A FRAC (LIQUID STORAGE) TANK OR DISCHARGE THROUGH FILTER FABRIC TO TRAP SEDIMENT.
5. EXPAND AND RECONSTRUCT SOUTHERN BASIN. BASIN CONSTRUCTION SHOULD TARGET PERIODS OF DRY WEATHER. HOWEVER, IF STORMWATER ACCUMULATES IN BASIN DURING CONSTRUCTION, STORMWATER SHOULD BE DEWATERED INTO A FRAC (LIQUID STORAGE) TANK OR DISCHARGE THROUGH FILTER FABRIC TO TRAP SEDIMENT.
   a. NOTE: DO NOT PUMP STORMWATER INTO NORTHERN BASIN.
6. ONCE THE BASINS ARE COMPLETED, ANY ACCCUMULATED SEDIMENT OR DEBRIS WITHIN STRUCTURES DRAINING TO THE BASINS SHOULD BE CLEANED OF SEDIMENT PRIOR TO BRINGING THE ATS ONLINE.
7. THE ATS SHALL NOT BE BROUGHT ONLINE UNTIL THE BASINS ARE COMPLETE AND STABILIZED.
8. EROSION AND SEDIMENT CONTROL MEASURES SHALL BE REMOVED ONCE THE PROJECT AREA HAS BEEN STABILIZED.



Geosyntec consultants
227 WILLOW STREET, SUITE A201
SOUTH HAMILTON, MA 01982
TELEPHONE: 603.205.8052

ALLIED RECYCLING
1901 MAIN STREET
WALPOLE, MA 02081
TELEPHONE: 508.668.8699

| REVA | DATE | DESCRIPTION | DRN | APP |
|---|---|---|---|---|
| 0 | 08/18/2023 | ADDRESSING WALPOLE CONSERVATION COMMISSION COMMENTS FROM AUGUST 2023 HEARING | JD | DHB |

TITLE:
**DETAILS III**

PROJECT:
**STORMWATER DRAINAGE IMPROVEMENTS PROJECT**

SITE:
**1901 MAIN STREET, WALPOLE, MASSACHUSETTS**

THIS DRAWING MAY NOT BE ISSUED
FOR PROJECT TENDER OR
CONSTRUCTION, UNLESS SEALED.

COMMONWEALTH OF MASSACHUSETTS
DANIEL H. BOURDEAU
CIVIL
No. 47558
REGISTERED PROFESSIONAL ENGINEER
SIGNATURE
08/03/2023
DATE

| | | | |
|---|---|---|---|
| DESIGN BY: | DJB | DATE: | AUGUST 2023 |
| DRAWN BY: | JD | PROJECT NO.: | BE0284 |
| CHECKED BY: | DJB | FILE: | BE0284.01-C10 |
| REVIEWED BY: | DJB | DRAWING NO.: | |
| APPROVED BY: | DJB | 10 OF 10 | |

DESIGN DRAWING